Capt. Milbert **MINDES**, Plaintiff-
Appellant,

v.

Dr. Robert C. **SEAMAN**, Secretary of the
United States Air Force, et al.,
Defendants-Appellees.

No. 71-2408

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Dec. 22, 1971.

---

* ▮ Rule 18, 5th Cir.; see Isbell Enter-
prises, Inc. v. Citizens Casualty Co. of

N. Y., 431 F.2d 409, Part I (5th Cir.
1970).

Seymour Benson, Charles Holcomb and Jacob, Benson & Holcomb, Orlando, Fla., for plaintiff-appellant.

Alan C. Todd, Asst. U. S. Atty., John L. Briggs, U. S. Atty., Orlando, Fla., for defendants-appellees.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

CLARK, Circuit Judge:

According to the allegations of his complaint, which must be taken as admitted in the procedural posture of this appeal, Air Force Captain Milbert Mindes has tenaciously sought to void a factually erroneous and adverse Officer Effectiveness Report (OER) which resulted in his being separated from active duty and placed in a reserve status. However, his efforts to date have been fruitless. After traversing all available intraservice procedural reviews—ending with a denial of relief by the civilian Air Force Board for Correction of Military Records (Board)—Mindes filed a complaint seeking declaratory and injunctive relief in the district court. On a hearing on plaintiff's motion for a temporary restraining order and before answer or other responsive pleading, that court not only denied the temporary restraining order but also dismissed the cause with prejudice for want of jurisdiction. We vacate and remand with directions to review the cause on its merits, applying the standards articulated here.

Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946) teaches that the procedure of rendering a final dismissal for want of jurisdiction should be utilized sparingly. This analysis by Professor Wright is apt. "[F]ederal jurisdiction exists if the complaint states a case arising under federal law, even though on the merits the party may have no federal right. If his claim is bad, then judgment is to be given against him on the merits, and even if the court is persuaded that federal law does not give the right the party claims, it is to dismiss for failure to state a claim on which relief can be granted rather than for want of jurisdiction. Dismissal for want of jurisdiction is appropriate only if the federal claim is frivolous or a mere matter of form." (Footnotes omitted). C. Wright, Law of Federal Courts 62 (2d ed. 1970). Since we find that Mindes' federal claims are not frivolous, it follows that the court erred in basing its dismissal on lack of jurisdiction. The proper test was to determine if this cause fails to state a claim on which relief may be granted.

Not only because a judgment which is right for the wrong reasons is due to be affirmed, but also since the core issue must be faced on remand, an

unreasoned vacation of the dismissal as procedurally erroneous could be improper or constitute poor judicial husbandry. Hence we make this somewhat detailed analysis of when internal military affairs should be subjected to court review.

What we really determine is a judicial policy akin to comity. It is a determination made up of several subjective and interrelated factors. Traditional judicial trepidation over interfering with the military establishment has been strongly manifested in an unwillingness to second-guess judgments requiring military expertise and in a reluctance to substitute court orders for discretionary military decisions. Concern has also been voiced that the courts would be inundated with servicemen's complaints should the doors of reviewability be opened. But the greatest reluctance to accord judicial review has stemmed from the proper concern that such review might stultify the military in the performance of its vital mission. On the other hand, the courts have not entirely refrained from granting review and sometimes subsequent relief. However, no collection or collation of these cases has yet been attempted by this circuit. This is the task we undertake now.

■ The basic starting point is obviously the precedents of the Supreme Court. In Harmon v. Brucker, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958) the Secretary of the Army had issued discharge certificates in a form other than "honorable", and in doing so had taken into account the inductees' pre-induction activities. The Court, after construing various statutes and regulations, concluded that the Secretary had acted beyond the scope of his statutory and regulatory powers in utilizing pre-induction activities as a basis for his decision. But more importantly for our purposes, the Court held that the federal courts may review matters of internal military affairs to determine if an official has acted outside the scope of his powers.

In Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953) the habeas petitioner launched a two-pronged attack on the failure of the Army to grant him a commission and to assign him duties befitting his civilian status as a doctor. Orloff first argued that under the applicable statutes he was entitled to a commission, and that it was denied him because he had exercised Fifth Amendment rights against self-incrimination. The Court held that the Army was justified in refusing to commission Orloff due to the exercise of these rights since the President certainly had the discretion to deny a position of honor and trust to one whose loyalty is in doubt. Nonetheless, note should be taken that the Court allowed review of this attack although it denied relief to Orloff on the merits. Secondly, Orloff contended that as a doctor he was entitled to duties commensurate with his particular civilian medical skills. The Army conceded that under the statutes Orloff was entitled to be assigned to duties in the medical field but argued that particular assignments within that field were within the discretion of the Army. The Court agreed, and went further, stating that the courts would not review duty assignments even if discriminatorily made. However, this phase of Orloff's case raised no question of deprivation of constitutional rights or action clearly beyond the scope of Army authority. Thus the last statement of the Court must be read restrictively. The Court could not stay its hand if, for example, it was shown that only blacks were assigned to combat positions while whites were given safe jobs in the sanctuary of rear echelons.

In Reaves v. Ainsworth, 219 U.S. 296, 31 S.Ct. 230, 55 L.Ed. 225 (1911), Reaves was found by a medical board to be mentally unfit for promotion, which finding required that he be discharged from the service. Reaves mounted a double-barreled assault on the Army, claiming a denial of due process. First, he attacked the jurisdiction of the board; but the Court, after reviewing the merits, found that the board did not lack jurisdiction. Second, Reaves argued that even if the board had jurisdiction, its exercise of that jurisdiction was arbitrary

and capricious. The Court declined to even review the merits of this latter argument, stating that to do so would involve the courts in commanding and regulating the Army. The reason we discern for this refusal to review is that it would have entailed an analysis of the medical records and a determination of Reaves' fitness as an officer. Clearly, the Court was unwilling to venture into this area of military expertise.

In numerous cases the courts of appeal have held that review is available where military officials have violated their own regulations, which is one thing Mindes argues has happened to him. *See, e. g.*, Feliciano v. Laird, 426 F.2d 424 (2d Cir. 1970); Van Bourg v. Nitze, 128 U.S.App.D.C. 301, 388 F.2d 557 (1967). *See also* Bluth v. Laird, 435 F.2d 1065 (4th Cir. 1970); Nixon v. Secretary of Navy, 422 F.2d 934 (2d Cir. 1970); Schatten v. United States, 419 F.2d 187 (6th Cir. 1969); Smith v. Resor, 406 F.2d 141 (2d Cir. 1969).

Judicial review has been held to extend to the constitutionality of military statutes, executive orders, and regulations—another claim Mindes advances. *See* Morse v. Boswell, 289 F.Supp. 812 (D.Md.1968), aff'd 401 F.2d 544 (4th Cir. 1968), in which the constitutionality of the statute allowing the President to call up reserve forces was reviewed and found constitutional. Similarly, in Goldstein v. Clifford, 290 F.Supp. 275 (D.N.J.1968), a three-judge court reviewed the constitutionality of the statute and executive order providing for the call-up of reserves. Recently this Circuit had the opportunity to review the constitutionality of a regulation promulgated by the commander of a military installation. United States v. Flower, 452 F.2d 80 (5th Cir. 1971). Although the case contains a factual distinction since the plaintiff was not a serviceman, the following words are apt to the question here:

> We do not infer that the commander has unfettered discretion under this regulation. We hold only that within certain limits, the military establish-

ment has authority to restrict the distribution of printed materials. This right to restrict distribution must be kept within reasonable bounds and courts may determine whether there is a reasonable basis for the restriction, Dash v. Commanding General, Fort Jackson, South Carolina, 307 F. Supp. 849 (D., S.C., 1969), affirmed [Yahr v. Resor] 4 Cir., 1970, 431 F.2d 690, certiorari denied [Dash v. Commanding General, Fort Jackson, South Carolina] 401 U.S. 981, 91 S.Ct. 1192, 28 L.Ed.2d 333 (1970). *Whether the Post Commander acts arbitrarily or capriciously, without proper justification, is a question which the courts are always open to decide.* (Emphasis added) At 86.

However, some such attacks on regulations have produced the opposite result. In two cases in which reservists were called to active duty for failure to satisfactorily perform their reserve obligations, i. e. their long hair did not present the required "neat and soldierly appearance", the reservists mustered several constitutional arguments to support their alleged right to wear long hair, but the 2nd and 7th Circuits declined review. Anderson v. Laird, 437 F.2d 912 (7th Cir. 1971); Raderman v. Kaine, 411 F.2d 1102 (2d Cir. 1969). Both courts held that what constitutes a "neat and soldierly appearance" was within the discretion of the military. This Circuit, in a per curiam opinion, affirmed the dismissal of a case on the same subject in which the serviceman had failed to exhaust available service remedies. However, in dicta, the court reached the merits of the regulation and held it valid. Doyle v. Koelbl, 434 F.2d 1014 (5th Cir. 1970). With regard to exhaustion, *see also* In re Kelly, 401 F.2d 211 (5th Cir. 1968); Tuggle v. Brown, 362 F.2d 801 (5th Cir. 1966); and Sherman, Judicial Review of Military Determinations and the Exhaustion of Remedies Requirement, 55 Va.L.Rev. 483 (1969).

Litigation challenging individual orders alleged to violate the rights of the serviceman involved have been unsuc-

cessful. Without noting the presence of any constitutional contention, the 9th Circuit has held that it would not review the question of why an officer was relieved from the command of his ship. Arnheiter v. Chafee, 435 F.2d 691 (9th Cir. 1970). In Cortright v. Resor, 447 F.2d 245 (2d Cir. 1971), the plaintiff soldier was transferred from New York to El Paso, Texas, allegedly because of First Amendment activities. The 2nd Circuit held that court interference with military transfer orders required a stronger showing than Cortright presented.

Court-martial convictions alleged to involve errors of constitutional proportions have consistently been held to be subject to court review. In Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953), the Supreme Court held court-martial convictions of servicemen were subject to habeas corpus review, but the scope of that review was left uncertain. Subsequently, this Circuit held that a collateral habeas attack could inquire into the deprivation of constitutional rights. See Gibbs v. Blackwell, 354 F.2d 469 (5th Cir. 1965). *See also* McCurdy v. Zuckert, 359 F.2d 491 (5th Cir. 1966); Kauffman v. Secretary of the Air Force, 135 U.S.App. D.C., 415 F.2d 991 (1969). Other circuits have done more than set aside court-martial convictions. In Ashe v. McNamara, 355 F.2d 277 (1st Cir. 1965), the 1st Circuit required the Board for the Correction of Military Records to expunge from a serviceman's record a dishonorable discharge eventuating from a court-martial which was infected by constitutional violations. The 10th Circuit followed suit. Smith v. McNamara, 395 F.2d 896 (10th Cir. 1968); Angle v. Laird, 429 F.2d 892 (10th Cir. 1970).

Selective service induction procedures present another area with clear precedent for judicial review, despite a limiting statute. 50 U.S.C.A.App. § 460(b)(3). *See* Oestereich v. Selective Service System, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), where the Board acted outside the scope of its statutory authority; and Wolff v. Selective Service Local Board No. 16, 372 F.2d 817 (2d Cir. 1967), where the Board deprived the plaintiffs of their First Amendment rights.

From this broad ranging, but certainly not exhaustive, view of the case law, we have distilled the primary conclusion that a court should not review internal military affairs in the absence of (a) an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (b) exhaustion of available intraservice corrective measures. The second conclusion, and the more difficult to articulate, is that not all such allegations are reviewable.

A district court faced with a sufficient allegation must examine the substance of that allegation in light of the policy reasons behind nonreview of military matters. In making that examination, such of the following factors as are present must be weighed (although not necessarily in the order listed).

1. The nature and strength of the plaintiff's challenge to the military determination. Constitutional claims, normally more important than those having only a statutory or regulatory base, are themselves unequal in the whole scale of values—compare haircut regulation questions to those arising in court-martial situations which raise issues of personal liberty. An obviously tenuous claim of any sort must be weighted in favor of declining review. *See e. g.*, Cortright v. Resor, *supra*.

2. The potential injury to the plaintiff if review is refused.

3. The type and degree of anticipated interference with the military function. Interference per se is insufficient since there will always be some interference when review is granted, but if the interference would be such as to seriously impede the military in the performance of vital duties, it militates strongly against relief.

4. The extent to which the exercise of military expertise or discretion is involved. Courts should defer to the su-

perior knowledge and experience of professionals in matters such as promotions or orders directly related to specific military functions.

We do not intimate how these factors should be balanced in the case *sub judice*. That is the trial court's function.

Mindes alleges that: (i) he was denied due process because his separation from the service was based upon a factually erroneous OER: (ii) the promotion or discharge regulation, AFR 36.12 ¶74(c), violates due process; (iii) the Board denied him due process by failing to conduct a full, fair, and impartial hearing; and (iv) the Board denied him due process by failing to file findings of fact and conclusions of law. While we can assert that Mindes' allegations, in toto, are sufficient to withstand a motion to dismiss at the pleading stage, it is for the district court to weigh and balance the factors we have set out as to the proven or admitted facts. Therefore, nothing said here should be read as intimating any opinion as to reviewability or outcome of any part of his claims.

The judgment of the district court is vacated and the cause is remanded for further proceedings not inconsistent with this opinion.

Vacated and remanded.