**Lt. Col. James W. McGEE, IV,**
**238–60–5949**

v.

**James R. SCHLESINGER, in his capacity as Secretary of Defense, et al.**

**Civ. A. No. SA–73–CA–311.**

United States District Court,
W. D. Texas,
San Antonio Division.

July 12, 1974.

Thomas Rocha, Jr., San Antonio, Tex., for plaintiff.

William S. Sessions, U. S. Atty., by Henry Valdespino, Asst. U. S. Atty., San Antonio, Tex., for respondents.

## MEMORANDUM OPINION AND ORDER

JOHN H. WOOD, Jr., District Judge.

Petitioner filed his Petition for a Declaratory Judgment and Writ of Mandamus on December 11, 1973, therein requesting this Court to establish Petitioner's Active Duty Service Commitment Date as January 17, 1974 and to order Respondents to accept Petitioner's resignation and release Petitioner from active duty by honorable discharge on January 17, 1974. On April 24, 1974 this Court held a hearing on Respondents' Motion to Dismiss Petitioner's Complaint. After considering the pleadings (including exhibits), legal authorities (including Air Force Regulations), and after hearing the testimony of the witnesses and arguments of counsel, and after reviewing the applicable law, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

### I.

Petitioner, a physician, served in the United States Air Force Reserves as a Second Lieutenant from May 6, 1964 to September 8, 1964. Petitioner then participated in the Senior Medical Student Program of the Air Force Institute of

Technology, thereby incurring a three (3) year Active Duty Service Commitment (ADSC).

### II.

Petitioner satisfied two and one-half (2½) years of this commitment by serving on active duty as a Flight Surgeon from July 8, 1966 to December 31, 1968.

### III.

On January 1, 1969 Petitioner entered residency training thereby incurring another year of ADSC so that at the time of his completion of residency training Petitioner had an ADSC attributable to training of eighteen (18) months.

### IV.

In January, 1971, while still in residency training, Petitioner accepted $3,889.20 in continuation pay by signing a continuation pay agreement as required by Air Force Regulation (AFR) 36-8. By accepting this pay Petitioner acquired an additional year of ADSC to be added to any ADSC attributable to training thereby increasing his ADSC to two and one-half (2½) years.

### V.

On January 31, 1973, Petitioner voluntarily tendered his resignation from all appointments in the United States Air Force, effective January 17, 1974. Petitioner stated that the reasons for the submission of his resignation were that he would have fulfilled his ADSC as of the effective date of his resignation and that he desired to enter private practice.

### VI.

Petitioner's resignation was returned without action on March 12, 1973 with a letter from Colonel Anderson, USAF, MC, Chief Medical Education Division, Office of the Surgeon, Randolph AFB, Texas, stating that Petitioner had incurred an extra year by accepting continuation pay and the date when he would fulfill all commitments was June 30, 1974.

### VII.

By a letter dated October 17, 1973, from his attorney to Colonel Anderson Petitioner requested that the Secretary of the Air Force reconsider Petitioner's requested resignation.

### VIII.

Petitioner's request was denied by letter in which he was again informed of his ADSC and advised that if he wanted review by the Secretary, Petitioner must go through normal channels.

### IX.

On December 11, 1973, Petitioner petitioned this Court for Declaratory Relief and a Writ of Mandamus.

### X.

On February 19, 1974, Respondent filed a Motion to Dismiss Petitioner's Complaint.

### CONCLUSIONS OF LAW

### I.

 Respondents' Motion to Dismiss must be granted. Mindes v. Seaman, 453 F.2d 197 (5th Cir. 1971) is controlling and holds that this Court lacks jurisdiction over the case. *Mindes*, supra, vacated the judgment of the lower Court dismissing Plaintiff's Complaint for lack of jurisdiction. The Court therein enumerated certain factors to be examined in determining whether a Court should review internal military affairs. Those factors are: (1) the nature and strength of Plaintiff's challenge to military determination; (2) the potential injury to Plaintiff if review is refused; and (3) the type and degree of anticipated interference with the military function and the extent to which expertise and discretion is involved. 453 F.2d 197, 201–202. This case is one where it is particularly appropriate for the Court to exercise its discretion in refusing jurisdiction. Petitioner's challenge is not particularly strong. Petitioner's ADSC is the product of the plain requirements of valid

regulations which created certain specified active duty service commitments when Petitioner *voluntarily* availed himself of Government sponsored training and accepted extra compensation under the Continuation Pay Program with contemporaneous acknowledgment of his understanding of the additional service commitment this entailed. The injury that would be suffered by Petitioner is the service of an extra six (6) months on active duty, while the interference with the military in having a Civil Court interpret its regulations would be great and in this case unnecessary.

Concomitantly Courts have frequently held that they lack jurisdiction to review military matters. The Supreme Court has repeatedly warned against premature Court interference with military procedures. Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953). "Judges are not given the task of running the Army." 345 U.S. 83, 93, 73 S.Ct. 534, 540. The Supreme Court reiterated its warning against unwarranted Court interference in Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953). "Military law, like state law, is a jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment. This Court has played no role in its development; we have exerted no supervisory powers over the courts which enforce it; the rights of men in the armed forces must perforce be conditioned to meet certain overriding demands of discipline and duty, and the Civil Courts are not the agencies which must determine the precise balance to be struck in this adjustment. The Framers expressly entrusted this task to Congress." 346 U.S. 137, 140, 73 S.Ct. 1045, 1047. The Supreme Court only two weeks ago again recognized " . . . that the military is, by necessity, a specialized society separate from civilian society". Parker, Warden et al. v. Levy, —— U.S. ——, 94 S.Ct. 2547, 41 L.Ed.2d —— (1974).

■ This is not to say that the Courts must refrain from all reviews of military matters. However, recently in Gilligan v. Morgan, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973) the Supreme Court again espoused the position that the Courts do not have jurisdiction to review discretionary acts of the military. This Circuit has also adhered to this position. Silverthorne v. Laird, 460 F.2d 1175 (5th Cir. 1972). With such strong precedent to guide it this Court declines to interfere with matters that should remain solely within the purview of the military.

## II.

■ Assuming arguendo that this Court could review the acts of the Air Force as they affect the Petitioner, the Court would still lack jurisdiction because the Petitioner has not exhausted his administrative remedies. It is clear that Petitioner has another adequate remedy available; that is application to the Air Force Board for the Correction of Military Records. Not only is the Board designed to give the type of relief sought in this case, but it can be fairly assumed that it has far greater expertise in this type of case than a Federal Court.

10 U.S.C. § 1552 authorizes the Secretary of the Air Force to "correct any military record . . . when he considers it necessary to correct an error or remove an injustice." Pursuant to the authority contained in this statute as implemented by AFR 31–3 the Air Force Board for Correction of Military Records is available for precisely the relief sought by the Petitioner. Inquiry of the Board discloses that Petitioner has failed to avail himself of this administrative remedy. According to *Mindes*, supra, "a Court should not review internal military affairs in the absence of (a) an allegation of the deprivation of a constitutional right or an allegation that the military has acted in violation of applicable statutes or its own regulations and (b) *exhaustion of available intraservice corrective measures.*" 453 F.2d 197, 201. Therefore, until Petitioner does exhaust his administrative reme-

**322**

dies he is barred from seeking judicial relief by the second prong of the *Mindes* test. Cf. *McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); *Beard v. Stahr*, 370 U.S. 41 (1962); *Hadnott v. Laird*, 149 U.S. App.D.C. 358, 463 F.2d 304 (1972); *Sohm v. Fowler*, 124 U.S.App.D.C. 382, 365 F.2d 915 (1966); and *McCurdy v. Zuckert*, 359 F.2d 491 (5th Cir. 1966).

■ Petitioner contends that he should not be made to seek administrative correction of the error of which he complains because to do so would in all probability delay any final determination as to the proper ADSCD well past January 17, 1974, the requested date of release. Such a contention is patently invalid. To hold otherwise would be to act to completely subvert the principle of exhaustion of administrative remedies. The contention is particularly unpersuasive in the instant case, for to give effect to it would cause the Government to suffer the consequences of Petitioner's failure to seek prompt administrative relief by submitting his complaint to the Air Force Board for Correction of Military Records.

Petitioner in signing such continuation pay agreement acknowledged his understanding of the provisions of the Continuation Pay Program. In fact, the document signed in 1972 specifically stated that the one (1) year ADSC attributable to his acceptance of continuation pay would be added to the ADSC he possessed because of training programs. In addition, Petitioner was expressly advised by a letter dated March 12, 1973 that his ADSCD was June 30, 1974. If Petitioner's acknowledgments as to his understanding as to the provisions of the Continuation Pay Program are to be believed, then he has been aware since January, 1971 of his ADSCD. In any event, Petitioner has certainly been aware since March 12, 1973 of the Air Force's computation and should have exhausted his administrative remedies by submitting this question to the Air Force Board for Correction of Military Records. Petitioner, by his own in-

action and through no fault of the Air Force, has failed to exhaust such administrative remedies.

Accordingly it is ordered, adjudged and decreed that Respondents' Motion for Dismissal should be, and the same is hereby, in all things granted.