Robert M. SMITH

v.

The UNITED STATES NAVY and the Department of the Navy.

No. 81–6452–Civ–NCR.

United States District Court,
S.D. Florida,
Ft. Lauderdale Division.

Oct. 11, 1983.

Rosen, Rosen & Associates, P.A., Miramar, Fla., for plaintiff.

Jon May, U.S. Atty., Miami, Fla., Donal M. Hill, Commander, JAGC, USN, Department of the Navy, Alexandria, Va., for defendant.

## SUMMARY JUDGMENT

ROETTGER, District Judge.

This case concerns a claim by plaintiff, Robert M. Smith, for unspecified equitable relief and money damages allegedly flowing from a decision by the Department of the Navy not to offer him an appointment as a commissioned Medical Service Corps officer in the U.S. Naval Reserve.

On March 16, 1980, plaintiff applied for a commission as an officer in the Medical Service Corps of the U.S. Naval Reserve. In so doing, he completed an Application for Commission and a Statement of Personal History. Defendants' Exhibit 2 at 1–8. Simultaneously, plaintiff was required to submit to a military physical examination at the Armed Forces Examining and Entrance Station to determine his physical condition. Defendants' Exhibit 2 at 24.

In conjunction with his application for status as a commissioned naval officer, plaintiff sought entry in the Navy's Health Professions Scholarship Program in clinical psychology. Entry into this program was competitive as there were more than 20 applications for only eight vacancies. Moreover, the clinical psychology scholarship program has not been offered since April of 1980. Affidavit of Captain E.R. Christian, MSC, USN. Had plaintiff been accepted for this program, he would have been appointed as an ensign in the Navy's Medical Service Corps. 10 U.S.C. § 2120 (1976); Defendants' Exhibit 4 at 3–4.

Following a physical examination, plaintiff was notified that, because he lacked the index finger of his right hand, he was not qualified for military duty as a commissioned naval officer. Defendants' Exhibit 2 at 24–25. This decision was based on the physical standards established in the Manual of the Medical Department, U.S. Navy (MANMED). At the time plaintiff sought

a naval commission, paragraph 15–6 of the MANMED provided:

> Physical Standards for Entrance Into the Naval Service
>
> (1) Articles 15–8 through 15–28 set forth the physical standards for entrance into the naval service, except the physical standards for enlistment which are set forth in article 15–30. Where the standards differ for different groups of personnel as in male and female, Regular and Reserve, Navy and Marine Corps, the differences will be noted under the particular system or in separate articles in this chapter. In addition to the statement of the standard, there is included under each system a list of causes for rejection and where indicated, a brief resume of the method for conducting the examination. The lists of causes for rejection are not intended to be complete, but are representative. A specific cause of rejection as listed is usually to be considered disqualifying while such condition persists.

Defendants' Exhibit 3 at 4.

> Paragraph 15–13(2), in turn provided: Upper Extremities. The following are causes for rejection:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (b) Hand and fingers:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (2) Absence (or loss) of distal and middle phalanx of index, middle, or ring finger of either hand irrespective of the absence (or loss) of little finger. . . .

Defendants' Exhibit 3 at 5.

Plaintiff's inability to meet the Navy's physical standards for commissioning was confirmed by the Chief of the Navy's Bureau of Medicine and Surgery in April 1980. Defendants' Exhibit 2 at 13a. Following rejection, plaintiff sought congressional intercession and, some months later, on November 4, 1980, he filed a complaint with the Department of Labor alleging discrimination in hiring because of his physical handicap, claiming a violation of the Rehabilitation Act of 1973.

The Surgeon General of the Navy, Vice Admiral Arentzen, responded to the congressional inquiries received by the Navy. He advised plaintiff through his congressman and senators that if he resubmitted his application for commissioning, his physical qualifications would be reviewed. Vice Admiral Arentzen stated further that following this review a waiver recommendation would be made if "indicated". Defendants' Exhibit 2 at 15, 18. At the time of Vice Admiral Arentzen's writing, however, the deadline for applications for the program had expired and the program was no longer available to applicants. Thus, when plaintiff resubmitted his application, he was again advised that he could not be accepted for the program. Defendants' Exhibit 2 at 26, 28.

The Department of Labor, on January 16, 1981, concluded it had no jurisdiction over the discrimination complaint filed by plaintiff and, therefore, forwarded it to the Commander of the U.S. Navy's Recruiting Command. Defendants' Exhibit 2 at 20–21. The Recruiting Command responded by stating that:

> The Navy Recruiting Command's inquiry into the facts clearly establishes that the program was not available when Mr. Smith submitted his application. The resubmission was an administrative error, as the application should have been rejected outright.
>
> The Navy sincerely apologizes for not properly ruling on this matter at the outset. . . .

Defendants' Exhibit 2 at 19.

Although it appears that the scholarship program *was* available at the time of plaintiff's initial application on March 16, 1980, it is equally clear that it *was not* available at the time he resubmitted his application.

Plaintiff brought this action against the United States Navy and Navy Captain E.R. Christian claiming that the Navy violated his rights under Section 504 of the Rehabilitation Act of 1974, as amended (hereinafter referred to as the Act), 29 U.S.C. § 794 (Supp. III 1979), when the Navy rejected plaintiff's application for entry into

the Navy Health Professions Scholarship Program. That Act provides in relevant part as follows:

No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794. Defendant, E.R. Christian, has been voluntarily dismissed by plaintiff.

Defendant has moved for summary judgment on the following four grounds:

(1) That plaintiff's complaint is not reviewable under the test of *Mindes v. Seaman,* 453 F.2d 197 (5th Cir.1971);

(2) That the Rehabilitation Act of 1973 does not forbid the United States Navy from establishing physical qualifications for potential commissioned naval officers.

(3) That plaintiff lacks standing to sue under the Rehabilitation Act of 1973, and

(4) That the Rehabilitation Act of 1973 provides no remedy in damages against the United States or one of its agencies.

Because of the court's conclusions with regard to the first two issues as posited by defendant, the court does not reach the other issues.

## REVIEWABILITY OF COMPLAINT

■ Defendant relies on *Mindes v. Seaman,* 453 F.2d 197 (5th Cir.1971) for its position that this complaint is not reviewable as a matter of law. There the Court of Appeals reviewed and analyzed the cases discussing when internal military affairs should be subjected to court review. The court held that under no circumstances should a court review internal military affairs in the absence of:

(a) an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations, and

(b) exhaustion of available intraservice corrective measures. *Id.* at 201.

Even, however, if a complaint properly alleges the foregoing, it is not necessarily reviewable under *Mindes.* Rather, a "district court faced with a sufficient allegation must examine the substance of that allegation in light of the policy of nonreview of military matters." *Id.* In deciding the appropriateness of review the trial court must weigh the following factors:

(1) The nature and strength of the plaintiff's challenge to the military determination.

(2) The potential injury to plaintiff if review is refused.

(3) The type and degree of anticipated interference with the military function.

(4) The extent to which exercise of military expertise or discretion is involved. *Id.* at 201–02.

Only after carefully weighing all of these factors, should the court decide whether to review the merits of a challenge to an internal military decision.

Defendant admits that no other intraservice or administrative remedies appear to be available to plaintiff at this juncture. Defendant's memorandum in support of motion for summary judgment at p. 8. Plaintiff has not, however, alleged a deprivation of his constitutional rights. Rather, plaintiff's complaint is grounded solely upon an alleged deprivation of "rights guaranteed by 29 U.S.C. § 974", i.e., the Rehabilitation Act. Complaint at ¶ 6.

The *Mindes* decision has been criticized for needlessly intertwining the concepts of justiciability with the standards to be applied to the merits of the case. *Dillard v. Brown,* 652 F.2d 316, 323 (3rd Cir.1981). The case *sub judice* presents a salient example of the inherent difficulty of applying the so-called *Mindes* test.

In determining whether a case is reviewable under *Mindes,* a district court is required to make at least three judgments that essentially go to the merits of the

case. Firstly, the court must determine whether plaintiff has made a preliminary showing of right to review by alleging a violation of "applicable statutes." *Mindes* at 201. Defendant argues that the Act does not apply to the military and, consequently, the case is not reviewable. Of course, if the court determines that the Act does not apply, it has made a judgment on the merits, since that is the sole basis of the complaint. Secondly, even if the court finds the allegation sufficient, it must proceed to assess the "nature and strength" of the challenge. Again, this goes to the merits and is comparable to the troublesome decisions trial judges often make in connection with requests for preliminary injunctive relief where the court must determine a party's likelihood of success on the merits. *Fed.R.Civ.P. 65; Florida Medical Ass'n, Inc. v. U.S. Dept. of Health Ed. and Welfare,* 601 F.2d 199 (5th Cir.1979). Thirdly, the "potential injury to plaintiff if review is refused" must be assessed. But, in an era of notice pleading, this can be nearly impossible to determine without addressing the merits of a claim. Here, for example, plaintiff seeks unspecified injunctive relief and damages. Defendant, however, challenges plaintiff's right to damages as a matter of law and asserts plaintiff cannot establish a right to equitable relief since he was only one of twenty applicants for eight positions and the program has not been offered since April of 1980.

In short, this court finds the test of *Mindes v. Seaman* largely unworkable on the present facts and finds instead the more general principles established by the Supreme Court to be more helpful.

In *Gilligan v. Morgan,* 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973) the plaintiffs, students of Kent State University, sought injunctive relief to restrain the Governor of Ohio in the future from prematurely ordering National Guard troops to duty in civil disorders and to restrain Guard leaders from violating students' rights. *Id.* at 4, 93 S.Ct. at 2443. There

the Court refused to encroach upon "critical areas of responsibility vested by the Constitution in the Legislative and Executive Branches of the Government", *Id.* at 7, 93 S.Ct. at 2444, and held that a federal court could not exercise continuing jurisdiction over the National Guard.

In *Orloff v. Willoughby,* 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953), the plaintiff was inducted into the military under a doctor's draft law, but he was refused a commission as an officer. The Army denied Orloff a commission because he refused to divulge whether he had been or was associated with various designated "subversive" organizations. In a habeas corpus petition, Orloff raised three claims: (1) under the statute providing for the drafting of doctors, the Army was required to award him a commission; (2) the Army was unconstitutionally punishing him for exercising his fifth amendment privilege against self-incrimination; and (3) the Army had treated him in a discriminatory and unfair manner.

The Court considered Orloff's constitutional and statutory challenges on the merits, and rejected them. Having found no constitutional or statutory violation, the Court declined to review the third claim made by Orloff: that the Army had been discriminatory and unfair in its treatment of him. In discussing this third, non-constitutional, non-statutory issue, the Court wrote:

> We know that from top to bottom of the Army the complaint is often made, and sometimes with justification, that there is discrimination, favoritism or other objectionable handling of men. But judges are not given the task of running the Army. The responsibility for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the ju-

diciary be as scrupulous not to interfere with legitimate army matters as the Army must be scrupulous not to intervene in judicial matters.

*Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 539–540, 97 L.Ed. 842 (1953).

Thus, *Orloff* teaches that the exercise of military discretion involving duty assignments will not be reviewed by a court if there has been no statutory or constitutional violation; a notion which has been reaffirmed in *Mindes.* At bottom, federal courts are competent to decide questions of law when clearly framed by constitution, statute or regulation. The courts are not, however, the branch of government that is in the business of exercising discretion in the day-to-day decisions necessary to run armies or navies.

The question before this court is definitely one suited to judicial resolution. Plaintiff's claim is at least colorable under the plain language of Section 504 of the Act. Plaintiff appears to have been excluded from consideration for a naval commission solely because he lacks an index finger. It is not surprising that plaintiff would express indignation at being rejected solely due to his handicap and seek judicial relief. This is particularly true given the purpose of the Act to eliminate discrimination against the handicapped in federally assisted programs and since plaintiff's handicap has no readily apparent relationship to his fitness for the duty to which he has applied.[1] *N.A.A.C.P. v. Wilmington Medical Center, Inc.,* 426 F.Supp. 919 (D.Del.1977). Defendant, in turn, argues as an alternative to the jurisdictional challenge, that the Act is inapplicable to physical qualifications for military service. What results is a question of interpretation of the scope of a Congressional enactment, a task historically left to the judiciary. Accordingly, this court holds that the complaint is reviewable as a matter of law.

**1.** The court presumes the Navy duty of plaintiff, a psychologist, would always be ashore rather

## APPLICATION OF THE REHABILITATION ACT TO THE MILITARY

■ Defendant submits that instead of the Act, another statutory scheme exists which pertains to physical standards for entry into the military which preempts the Rehabilitation Act. Importantly, this statutory scheme was not amended when Congress passed the Act and its 1978 amendments.

The applicable statutory plan found in Title 10 of the U.S.Code. 10 U.S.C. § 593(a) provides in pertinent part.

Appointments of Reserves in commissioned grades below lieutenant colonel and commander ... shall be made by the President alone.

10 U.S.C. § 591 provides in part as follows:

Reserve components: qualifications

\* \* \* \* \* \*

(b) Except as otherwise provided by law, the Secretary concerned shall prescribe physical, moral, professional, and age qualifications for the appointment of persons as Reserves of the armed forces under his jurisdiction.

Finally, at the time of plaintiff's application for commissioning, 10 U.S.C. § 5579(a) provided:

Under such regulations as the Secretary of the Navy prescribes, original appointments to the active list of the Navy in the Medical Service Corps may be made from persons who—

(1) are at least 21 and under 32 years of age; and

(2) have physical, mental, moral, and professional qualifications satisfactory to the Secretary.

It is apparent that Congress has given the executive branch wide latitude in determining who may be commissioned as Medical Service Corps officers in the Naval Reserve. Necessarily, this authority includes the ability to set physical standards for potential officers.

*than aboard ship.*

■ Under the rules of statutory construction

[t]he courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective. "When there are two acts upon the same subject, the rule is to give effect to both if possible .... The intention of the legislature to repeal 'must be clear and manifest.'" *United States v. Borden Co.*, 308 U.S. 188, 198 [60 S.Ct. 182, 188, 84 L.Ed. 181] (1939).

*Morton v. Mancari*, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974). Moreover, "where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Id.* at 550–51, 94 S.Ct. at 2482–83. Repeals of statutes by implication are not favored. *Id.* at 549, 94 S.Ct. at 2482; *Watt v. Alaska*, 451 U.S. 259, 267, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981).

■ Under these rules, the specific authority in 10 U.S.C. §§ 591(b) and 5579(a) must take precedence over the general guidelines of the Rehabilitation Act of 1973 on the subject of physical qualifications for commissioned officers of the Naval Reserve. Moreover, by recognizing that the Rehabilitation Act applies to hiring of civilian employees of the Federal Government but not to the commissioning of military officers or military programs established for this purpose, this court gives effect to both the Act and the cited provisions of Title 10.

■ In the alternative, this court finds that plaintiff is not an "otherwise qualified" individual under the Act. 29 U.S.C. § 794. In another context it would be duplicitous to hold that a handicap would preclude qualification for the rights established by an enactment intended for the "advancement of handicapped individuals." 29 U.S.C. § 791(b). In connection with the armed forces, however, Congress has expressly delegated authority to establish physical qualifications and did not expressly withdraw that authority when enacting the Rehabilitation Act. Accordingly, this court finds that the physical qualifications established for the appointment of Reserves determine whether an applicant is "otherwise qualified" under the Act. In the case at bar it is clear that plaintiff is not so qualified.

■ In other areas of federal legislation there may be stronger incentives to find that the Rehabilitation Act is a limitation on the authority to set and enforce physical qualifications. Special considerations are invoked in connection with the military. The Supreme Court has recognized that there are differences between the military and civil communities resulting from the fact that "it is the primary business of armies and navies to fight or be ready to fight wars should the occasion arise." *United States ex rel. Toth v. Quarles*, 350 U.S. 11, 17, 76 S.Ct. 1, 5, 100 L.Ed. 8 (1955). Bearing this in mind, this court cannot conclude that the Congress intended to withdraw its grant of authority to the military departments to establish physical qualifications with as broad and general an enactment as the Rehabilitation Act. *Johnson v. Alexander*, 572 F.2d 1219, 1224 (8th Cir. 1978). Accordingly, upon consideration of the entire record in this case, it is

ORDERED AND ADJUDGED that defendant's motion for summary judgment is granted and plaintiff's complaint is dismissed.