# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 23, 2024

Lyle W. Cayce
Clerk

————————

No. 23-30497

————————

Faith Crocker; David J. Schadwinkel; Ian R. McHaley; Christopher F. Duff; Byron O. Starks, Jr.; Wayne E. Johnson; Mendell L. Potier,

*Plaintiffs—Appellants*,

*versus*

Lloyd Austin; United States Department of Defense; Frank Kendall, III; Robert I. Miller; Richard W. Scobee,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:22-CV-757

_____

Before Southwick and Duncan, *Circuit Judges*, and Kernodle, *District Judge*.[*]

Jeremy D. Kernodle, *District Judge*:

This appeal arises out of the Air Force's COVID-19 vaccine mandate. After the Air Force rescinded the mandate, the district court dismissed the

_____

[*] United States District Judge for the Eastern District of Texas, sitting by designation.

case as moot. The district court also separately dismissed the claims of Plaintiff-Appellant Byron O. Starks, Jr. for lack of standing because the Air Force had separated him from service. Because the rescission did not redress all of plaintiffs' alleged harms and because Starks has standing, we REVERSE and REMAND.

## I.

On August 24, 2021, Secretary of Defense Lloyd Austin directed each military branch to immediately begin full vaccination of all members of the Armed Forces. Several days later, Secretary of the Air Force Frank Kendall implemented the mandate, ordering Air Force commanders to take all steps necessary to ensure all uniformed service members receive the COVID-19 vaccine. Failing to receive a vaccine would result in the initiation of administrative discharge proceedings against the service member. The Air Force allowed service members to request a religious exemption from the vaccine mandate and appeal a denied request. If an appeal was denied, the service member had five days to begin the COVID-19 vaccination before initiation of discharge proceedings.

At the time of the mandate, each of the seven Plaintiff-Appellants served on active- or reserve-duty in the Air Force. Each Appellant objected to the vaccine mandate based on sincerely held religious beliefs and requested a religious exemption. The Air Force denied all seven requests, and Appellants unsuccessfully appealed the denials. In many cases, the Air Force acknowledged the request was based on a sincerely held religious belief.

On March 20, 2022, Appellant Faith N. Crocker, a Senior Airman in the Air Force Reserve, sued Secretaries Austin and Kendall, the Department of Defense, and other Air Force officials (collectively, the "Air Force") in the Western District of Louisiana. Later, Appellants Christopher F. Duff, a Lieutenant Colonel in the Air Force; Wayne E. Johnson, a Lieutenant

No. 23-30497

Colonel in the Air Force Reserve; David J. Schadwinkel, a Major in the Air Force Reserve; Ian R. McHaley, a Master Sergeant in the Air Force; Mendell L. Potier, a Staff Sergent in the Air Force Reserve; and Byron O. Starks, Jr., an Airman First Class in the Air Force, joined the lawsuit. The amended complaint alleged that "Defendants' vaccination policies" violate Appellants' rights under the First Amendment, the Religious Freedom Restoration Act (RFRA), and the Administrative Procedure Act. The complaint sought a declaratory judgment that the vaccination policies are unlawful and preliminary and permanent injunctions prohibiting the Air Force from enforcing the policies.

At the time of the amended complaint, Starks was serving on active duty. A month later, on June 23, 2022, the Air Force separated Starks from the service. The Air Force argues that Starks was separated because of a preexisting and disqualifying medical condition, not because of his refusal to comply with the vaccine mandate. Starks, in turn, asserts that he was separated for his failure to comply with the mandate and that the Air Force's stated reason for the separation is pretext.

The Air Force moved to dismiss Starks's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that he lacked standing post-separation and that he failed to exhaust his administrative remedies. The district court granted the motion and dismissed Starks's claims for lack of standing "because he is no longer an active member of the Air Force" and is no longer subject to the COVID-19 vaccine mandate. The district court also agreed that Starks failed to exhaust his administrative remedies, applying *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971), which generally requires service members to exhaust intraservice administrative remedies before bringing a suit challenging a separation decision.

3

No. 23-30497

In December 2022, Congress enacted the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023, Pub. L. No. 117-236, 136 Stat. 2395 (2022) ("2023 NDAA"). Section 525 of the 2023 NDAA required Secretary Austin to rescind the vaccine mandate. 136 Stat. at 2571–72. By memorandum dated January 10, 2023, Secretary Austin stated that "[n]o individuals currently serving in the Armed Forces shall be separated solely on the basis of their refusal to receive the COVID-19 vaccine if they sought an accommodation on religious . . . grounds." Memorandum, Secretary of Defense, Recission of the August 24, 2021 and November 30, 2021 Coronavirus Disease 2019 Vaccination Requirements for Members of the Armed Forces (Jan. 10, 2023). Secretary Austin also directed military departments to update the records of any service member who had been subject to "any adverse actions solely associated with denials of such requests" and to "cease any ongoing reviews of current Service member religious . . . accommodation requests." *Id.* The memorandum further stated that any service members who had been discharged solely because of a refusal to receive the COVID-19 vaccine could "individually request a correction to their personnel records." *Id.* The Air Force implemented the recission over the following weeks. The Air Force also states that it has removed any adverse actions related to the vaccine mandate from the records of all Appellants (except Starks).

Thereafter, the Air Force moved to dismiss the claims of the remaining Appellants, arguing that the 2023 NDAA's recission mooted the case. The district court granted the motion. The district court held that, because the challenged vaccine mandate "simply does not exist anymore," "there is no axe left to fall." Thus, "there is simply no impending threat to [Appellants'] rights, and there is no live case or controversy for the Court to act on." The court also found that no exception to mootness applied.

This appeal followed.

4

## II.

We review de novo a district court's "dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) or for failure to state a claim pursuant to Rule 12(b)(6)." *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 421 (5th Cir. 2013). "Legal questions relating to standing and mootness are also reviewed de novo." *Id.*

As discussed above, the district court dismissed Appellants' claims on separate grounds. The district court determined that Starks—the only Appellant no longer serving in the Air Force—lacked standing after his separation and had failed to exhaust his administrative remedies. And it found that the claims of the six Appellants still serving in the Air Force were moot after the 2023 NDAA. The Court addresses each ground in turn.

## A.

First, the dismissal of Airman First Class Byron O. Starks, Jr.

### 1. Standing

The district court held that Starks lacked standing to challenge the Air Force's COVID-19 vaccination mandate because he is no longer an active service member. Starks, the court explained, "does not face an actual or imminent injury" because as a discharged serviceman, "Starks is not subject to the COVID-19 vaccine—even if the mandate were still in effect, it would not apply to Starks."

To establish standing, a plaintiff must plead and prove "an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Texas v. United States*, 809 F.3d 134, 150 (5th Cir. 2015) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). "[W]hen considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of

his or her legal claim." *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) (quoting *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007)).

Here, Starks sufficiently alleged injuries. His complaint stated that he faced "imminent involuntary administrative separation from the Air Force" because of his refusal to receive the COVID-19 vaccine. The Air Force discharged Starks less than a month after the amended complaint was filed. And because his separation was characterized as "general"—rather than honorable—he faces lasting harm, such as ineligibility for certain veteran benefits, including the GI Bill. *See, e.g.*, *Lorance v. Commandant, U.S. Disciplinary Barracks*, 13 F.4th 1150, 1165 (10th Cir. 2021) (finding that a habeas case was not mooted by a pardon where the petitioner still faced collateral consequences including loss of military benefits); *Gay Veterans Ass'n v. Sec'y of Def.*, 668 F. Supp. 11, 14 (D.D.C. 1987) ("[S]eparation from the military accompanied by a less-than-honorable discharge characterization hinders civilian employment opportunities, thereby infringing on constitutionally protected liberty and property interests . . . .").

The Air Force does not dispute Starks's alleged injuries but argues that they are "not consequences of the vaccination requirement." The Air Force contends that Starks "was discharged because he has a disqualifying medical condition, unrelated to COVID-19 or COVID-19 vaccination." But on a motion to dismiss, we assume Starks's well-pleaded factual allegations are true. *See Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). The Air Force also argues that Starks failed to allege these harms in his separation proceedings or include them in the amended complaint. Not so.

Starks made these alleged harms clear in his separation proceedings. After Starks joined the lawsuit, his counsel sent a letter to the Air Force "advis[ing] [it] not to take any negative personnel actions against Airman

First Class Starks during the pendency of his complaint." The letter also explicitly warned against separation on pretext: "Specifically, we understand the government is attempting to retaliate against Airman First Class Starks with an involuntary administrative separation on the pretextual grounds of erroneous enlistment."

Likewise, as previously discussed, the complaint in this case alleged that Starks "face[d] imminent involuntary administrative separation from the Air Force and the loss of the opportunity to serve his nation in uniform" because of his refusal to comply with the COVID-19 vaccination mandate. And Starks was separated from the Air Force just weeks later.

Accordingly, because Starks has sufficiently alleged injuries fairly traceable to the challenged actions of the Air Force, he has standing to bring his claims.

### 2. Exhaustion

The district court "[a]lternatively" dismissed Starks's claims because he failed to exhaust his administrative remedies. The court applied *Mindes*, which requires military plaintiffs to first exhaust intraservice administrative remedies before bringing a suit challenging a separation decision. We now clarify that RFRA claims are not subject to the *Mindes* exhaustion requirement.

*Mindes* held that "a court should not review internal military affairs in the absence of (a) an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (b) exhaustion of available intraservice corrective measures." 453 F.2d at 201. *Mindes* based this judge-made rule on "a judicial policy akin to comity," expressing concerns that "courts would be inundated with servicemen's complaints should the doors of reviewability be opened" and that "such review might stultify the military in the performance

of its vital mission." *Id.* at 199. *Mindes* has since faced significant criticism, including that it undermines civilian oversight of the military—a vital component of our constitutional order. *See, e.g.*, 13C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3534.1 n.80 (3d ed. June 2024 update) ("[T]here is nothing in the power of Congress to make rules for the government and regulation of the land and naval forces, nor in the powers of the President as commander in chief, that ousts the power of the courts to protect the constitutional rights of individuals against improper military actions."); Lindsay Lyon Rodman, *Doing Away with the Military Deference Doctrine: Applying Lessons from Civil-Military Relations Theory to the Supreme Court*, 99 N.D. L. Rev. 327, 372 (2024) (arguing that *Mindes* undermines civilian control of the military).

We have previously questioned whether RFRA claims are subject to *Mindes*. In *U.S. Navy Seals 1-26 v. Biden* ("*Navy Seals I*"), we explained that "*Mindes* abstention is rooted in the federal common law principle of 'comity,'" and noted that "it is likely that, following RFRA's enactment, abstention based on the *Mindes* test is no longer permissible." 27 F.4th 336, 346 (5th Cir. 2022). Several months after *Navy Seals I*, the Sixth Circuit squarely held that service members need not exhaust administrative remedies before bringing RFRA claims, pointing to "RFRA's text, structure, and context." *Doster v. Kendall*, 54 F.4th 398, 410–15 (6th Cir. 2022), *vacated as moot*, 144 S. Ct. 481 (Mem.) (2023). *See also Schelske v. Austin*, 649 F. Supp. 3d 254, 272 (N.D. Tex. 2022); *Colonel Fin. Mgmt. Officer v. Austin*, 622 F. Supp. 3d 1187, 1202 (M.D. Fla. 2022). The Supreme Court later vacated *Doster* as moot in light of the 2023 NDAA but did not comment on the Sixth Circuit's exhaustion analysis. *See* 144 S. Ct. at 481.

We likewise now hold that *Mindes* abstention does not apply to claims brought under RFRA. "Congress enacted RFRA in 1993 in order to provide very broad protection for religious liberty." *Burwell v. Hobby Lobby Stores,*

*Inc.*, 573 U.S. 682, 693 (2014). Indeed, "[b]y enacting RFRA, Congress went far beyond what this Court has held is constitutionally required" by the First Amendment. *Id.* at 706. "RFRA 'operates as a kind of super statute, displacing the normal operation of other federal laws.'" *Navy Seals I*, 27 F.4th at 346 (quoting *Bostock v. Clayton Cnty.*, 590 U.S. 644, 682 (2020)); *see also Korte v. Sebelius*, 735 F.3d 654, 673 (7th Cir. 2013) ("RFRA is structured as a 'sweeping "super-statute," cutting across all other federal statutes (now and future, unless specifically exempted) and modifying their reach.'" (quoting Michael Stokes Paulsen, *A RFRA Runs Through It: Religious Freedom and the U.S. Code*, 56 Mont. L. Rev. 249, 253 (1995))). RFRA thus "displace[s] a judge-created abstention doctrine" like *Mindes*. *Navy Seals I*, 27 F.4th at 346; *see also Doster*, 54 F.4th at 413 ("Because the Plaintiffs' claims arise from this *statutory* source [RFRA], we may not adopt common-law abstention rules as if we were regulating a *court-created* claim."). Further, "when Congress imposed procedural limits on RFRA or related statutes, it did so expressly." *Doster*, 54 F.4th at 414. The Religious Land Use and Institutionalized Persons Act, a statute related to RFRA, expressly incorporated a prisoner-exhaustion rule from other federal laws. *See id.* (citing 42 U.S.C. § 2000cc-2(e)). We should not read a military-exhaustion requirement into RFRA's text where none exists. *See id.*

In sum, Congress created in RFRA a cause of action for service members to vindicate their religious liberty rights. *See Navy Seals I*, 27 F.4th at 345–46 (stating that RFRA applies to the military). We will not defeat that statutory cause of action with a judge-made abstention doctrine. To do so would be to shirk our "virtually unflagging obligation . . . to exercise the jurisdiction given [to us]." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Starks may therefore proceed with his RFRA claim without first exhausting his intraservice administrative remedies.

9

**B.**

We next consider whether the claims of the six still-serving Appellants are moot.

"Mootness is a jurisdictional question" that goes to the heart of Article III's case-and-controversy requirement. *Abbott v. Biden*, 70 F.4th 817, 824 (5th Cir. 2023); *see also FBI v. Fikre*, 601 U.S. 234, 240–41 (2024). "The mootness doctrine . . . requires that a plaintiff's interest in a suit 'exist[] throughout the proceedings.'" *Abbott*, 70 F.4th at 824 (quoting *Uzuegbunam v. Preczewski*, 592 U.S. 279, 282 (2021)). "[A] case becomes moot 'when it is impossible for a court to grant "any effectual relief whatever to the prevailing party."'" *Id.* (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)). Thus, when "a complaining party manages to secure outside of litigation all the relief he might have won in it," the case is moot. *Fikre*, 601 U.S. at 240.

The Air Force has at least partially redressed the harm Appellants suffered by rescinding the vaccine mandate and correcting Appellants' service records. Appellants, however, allege that they suffer ongoing harm by being subject to a "sham religious accommodation process for vaccinations" employed by the Air Force. Appellants argue that the Air Force has "implemented an accommodation request process that is intended to deny all, or virtually all, religious exemptions from the vaccine mandate." They further argue that the process

> permits the Air Force to forego individualized assessment and to satisfy the compelling interest requirement through generic determinations . . . uses boilerplate statements to suffice for demonstrating that the Air Force's action[s] were the least restrictive means . . . permits the Air Force to discriminate against airmen who submit a request and to apply coercive tactics in order to pressure the servicemember to forego their

> beliefs . . . [and] permits Air Force leadership to dictate denial of all requests, no matter the individual circumstances of the request.

Indeed, the amended complaint sought relief from "Defendants' vaccination policies"—not merely the COVID-19 vaccine mandate. An entire section of the amended complaint criticizes the Air Force's religious exemption policy. And at oral argument, Appellants' counsel reiterated that Appellants fear they will be harmed when seeking religious accommodations from other vaccine requirements in the future. Appellants have thus plausibly alleged that the Air Force continues to employ an illegal process for religious accommodations and that they will again be injured by it. Thus, they have not "manage[d] to secure outside of litigation all the relief [they] might have won in it." *Fikre*, 601 U.S. at 240.

The Air Force relies heavily on our decision in *U.S. Navy Seals 1-26 v. Biden* ("*Navy Seals II*"), 72 F.4th 666 (5th Cir. 2023). In that case, members of Naval Special Warfare Command units sued the Navy, alleging that its failure to accommodate their religious objections to the COVID-19 vaccine mandate violated the First Amendment and RFRA. *Id.* at 670. The district court entered a preliminary injunction prohibiting the Navy from enforcing the vaccine mandate or taking adverse actions against the plaintiffs. *Id.* The Navy appealed the preliminary injunction. *Id.* at 670–71. While the appeal was pending, the Navy rescinded the mandate and removed all adverse actions pursuant to the 2023 NDAA. *Id.* at 671. We held that the preliminary-injunction appeal was moot because the recission gave the plaintiffs "'the precise relief' provided by the preliminary injunctions, leaving us 'unable to provide relief beyond what [the Navy] already gave.'" *Id.* at 673 (alteration in original) (quoting *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 375 (5th Cir. 2022)).

The Air Force argues that *Navy Seals II* controls here. But the Air Force misreads our opinion. We held only that the 2023 NDAA mooted the preliminary-injunction appeal, not the entire case. *See id.* In fact, we stated that the "mootness of this interlocutory appeal does not prevent the district court from ruling on any of Plaintiffs' claims that remain justiciable," and we remanded the case for further proceedings. *Id.* at 675–76; *see also id.* at 676 ("[T]his interlocutory appeal is moot because the Navy's vaccine policies challenged here have been rescinded . . . . That does not end the litigation, however."). On remand, the district court determined that the plaintiffs' "claims arising out of the [Navy's] broader vaccine accommodations policy may proceed." *U.S. Navy Seals 1-26 v. Austin*, No. 4:21-cv-01236-O, slip op. at 1–2 (N.D. Tex. Feb. 14, 2024). The plaintiffs had alleged "that their underlying harms derive from the lack of a proper religious accommodation process," took "issue with 'Defendants' policies and practices' rather than just the [COVID-19 vaccine mandate]," and expressed "hesitance to use the accommodations process going forward" because "Defendants have announced no changes to [the Navy's] overarching religious accommodations process." *Id.* at 7–9. Thus, the district court found that this "tangible policy . . . that the Court can still enjoin or declare unlawful" was "enough to keep this case alive." *Id.* at 12.

So too here. Although this case appeals a final judgment rather than a preliminary injunction, Appellants assert nearly identical allegations of discrimination arising from the Air Force's broader vaccination policy and religious accommodations process. The district court correctly determined that Appellants' claims relating specifically to the rescinded COVID-19 vaccine mandate and its direct consequences are moot. But the district court failed to consider Appellants' broader, ongoing claims concerning the Air Force's alleged "sham" religious exemption process and policies. "What matters is not whether a defendant repudiates its past actions, but what

repudiation can prove about its future conduct." *Fikre*, 601 U.S. at 244. The Air Force's recission of the vaccine mandate and removal of adverse actions does not ensure that it will not discriminate against Appellants in the future. The case is therefore not moot.

## III.

In sum, we hold that Starks has standing to challenge his discharge and need not exhaust his administrative remedies before bringing this suit. We also hold that the claims of the six Appellants still serving in the Air Force are not moot because they plausibly allege an ongoing harm—that they remain subject to an allegedly unlawful accommodations process.

We therefore REVERSE and REMAND for further proceedings in accordance with this opinion.