Maria HENSON, Plaintiff,

v.

Clifford ALEXANDER, in his official capacity as Secretary of the United States Army; Harold Brown, in his official capacity as Secretary of Defense; Lavern Weber, in his official capacity as Chief of the National Guard Bureau; Bill Clinton, in his official capacity as Governor of the State of Arkansas; and Jimmie "Red" Jones, in his official capacity as Adjutant General of The Arkansas National Guard, Defendants.

Civ. No. 78–5077.

United States District Court,
W. D. Arkansas,
Fayetteville Division.

Oct. 10, 1979.

 8

Joe B. Reed, Northwest Arkansas Legal Services, Inc., Fayetteville, Ark., for plaintiff.

Jackson M. Jones, Asst. Atty. Gen., Little Rock, Ark., for defendants Clinton and Jones.

Larry R. McCord, U. S. Atty., Steven N. Snyder, Asst. U. S. Atty., Fort Smith, Ark., John W. Matthews, Litigation Div., Dept. of the Army, Washington, D. C., for defendants Alexander, Brown, and Weber.

## MEMORANDUM OPINION

PAUL X WILLIAMS, Chief Judge.

This is an action in which Maria Henson seeks a declaration that a certain Arkansas Army National Guard regulation is unconstitutional and an injunction enjoining defendants from denying her admission into the Arkansas Army National Guard. The case is before the Court on the motion to dismiss, or in the alternative, for summary judgment, of defendants, Clifford Alexander, Lavern Weber, and adopted by defendants, Governor Bill Clinton and Jimmie "Red" Jones.

In the motion to dismiss, defendants contend that plaintiff's complaint is not justiciable and that it fails to state a cause of action. In the motion for summary judgment, defendants contend that Ms. Henson was denied admission to the Arkansas Army National Guard because of physical disqualifications and not because of the challenged regulation.

Ms. Maria Henson is 31 years old. She has custody of her nine-year-old daughter, Monica Tessa Ubillus. In July, 1978, while she and her daughter lived in Fayetteville, Arkansas, she made inquiry about joining the Arkansas National Guard. Sgt. Michael Frost visited with her and arranged for her to take the written and physical entrance examinations on July 16, 1978.

After being told that she had passed the written examination, Ms. Henson was told that she would have to give up legal custody of her daughter before she could enlist. At the physical examination, Ms. Henson was told that she was overweight and would have to produce a statement from her gynecologist and back doctor. Ms. Henson was not rejected for physical disqualifications, although her failure to pass the physical examination, along with the problem of custody of her daughter, prevented her acceptance at that time. Since Ms. Henson would not have taken basic training until January, 1979, the physical problems and custody situation were matters which the personnel at the Guard expected her to work out. Sgt. Frost made an appointment

for her with Northwest Arkansas Legal Services, Inc., to help her yield legal custody of her daughter.

When Sgt. Frost did not hear from Ms. Henson for several months, he concluded that she had abandoned her wish to join the National Guard and closed her file.

The regulation which Ms. Henson challenges is Table 2–1, Rule F.1(2) and (3), National Guard Regulation 600–200, and provides as follows:

(2) An applicant without a spouse may be processed for enlistment or reenlistment when the child or children have been placed in the custody of the other parent of the child or children by the court order and the applicant is not required to provide child support. No waiver is required. Court order will remain in effect throughout member's term of service. (3) An applicant without a spouse and with one or more dependents under 18 years of age is disqualified except as provided in (3) and (4) below. No waivers are authorized. An applicant without a spouse is defined as an applicant who is unmarried, is divorced, spouse is deceased, spouse has deserted applicant, spouse is incarcerated, spouse is not residing permanently with applicant, or applicant has sole custody of the dependent(s).

The defendants contend that the Court lacks subject matter jurisdiction to review the regulation because military regulations are not proper subjects for court review. They rely on *West v. Brown*, 558 F.2d 757 (5th Cir. 1977), and *Gilligan v. Morgan*, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973).

■ We hold that we have subject matter jurisdiction under 28 U.S.C. §§ 1361 and 1331(a). See *Gallo v. Brown*, 446 F.Supp. 45 (D.R.I.1978); *Mindes v. Seamon*, 453 F.2d 197, 198 (5th Cir. 1971); *Turner v. Egan*, 358 F.Supp. 560 (D.Alaska 1973), aff'd without op. 414 U.S. 1105, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973); and *Horn v. Schlesinger*, 514 F.2d 549 (8th Cir. 1975).

■ As taught in *Mindes v. Seamon, supra*, at p. 198, even though a district court has jurisdiction to review actions and regu-

lations of the Army or a State National Guard, there are policies which portend against exercise of such jurisdiction, and if present, the case should be dismissed for failure to state a claim on which relief can be granted.

The leading case on when a court should review actions or regulations of the Army or National Guard is *Mindes v. Seamon*, 453 F.2d 197 (5th Cir. 1971) (opinion by Judge Clark), (cited in *Horn v. Schlesinger*, 514 F.2d 549, 553, nn. 18 and 19 (8th Cir. 1975). *Mindes* was followed in *Turner v. Egan*, 358 F.Supp. 560 (D.Alaska 1973), which was affirmed without opinion by the United States Supreme Court, 414 U.S. 1105, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973).

■ *Mindes* taught that a court should review a military ruling or regulation only if there is an allegation of a deprivation of a constitutional right or an allegation that the military acted in violation of its own rules, regulations or statutes, and the intraservice corrective measures have been exhausted. The Court also held that even though there is a constitutional or regulatory claim and the intraservice remedies have been exhausted, a court should decline review if the policy reasons behind nonreview, when applied to the specific facts, outweigh the reasons and facts portending access to judicial review. In striking the balance, the Court enumerated the factors to be considered:

1. The nature and strength of the plaintiff's challenge to the military determination. Constitutional claims, normally more important than those having only a statutory or regulatory base, are themselves unequal in the whole scale of values—compare haircut regulation questions to those arising in court-martial situations which raise issues of personal liberty. An obviously tenuous claim of any sort must be weighted in favor of declining review. See e. g., *Cortright v. Resor* [447 F.2d 245 (2d Cir. 1971)], *supra.*
2. The potential injury to the plaintiff if review is refused.
3. The type and degree of anticipated interference with the military function.

Interference per se is insufficient since there will always be some interference when review is granted, but if the interference would be such as to seriously impede the military in the performance of vital duties, it militates strongly against relief.

4. The extent to which the exercise of military expertise or discretion is involved. Courts should defer to the superior knowledge and experience of professionals in matters such as promotions or orders directly related to specific military functions.

Ms. Henson has pleaded that the regulation is constitutionally infirm in that it unjustifiably discriminates against unmarried parents in violation of the equal protection clause of the Fifth Amendment, [the Court notes there is no equal protection expression in the Fifth Amendment, although the due process clause "forbids the Federal Government from denying equal protection of the laws." *Davis v. Passman*, —— U.S. ——, ——, 99 S.Ct. 2264, 2271, 60 L.Ed.2d 846 (1979)]; it unjustifiably penalizes her for having exercised freedom in matters of marriage and family life in violation of the due process clause of the Fifth Amendment; it creates an irrebuttable and unreasonable presumption that unmarried parents are unfit for guard membership in violation of due process; it creates an invidious and arbitrary distinction which punishes unmarried parents in violation of equal protection.

The defendants have tendered an affidavit stating that the regulation was recently enacted to remedy the frequent personnel problems which arose with single, custodial parents. Major General James G. Boatner averred that an inordinate amount of management time was spent by the military trying to accommodate the single custodial parent who was unable to provide care for the children during regular and odd-hour military duty; that the problem reduced the amount of flexibility in making assignments which the military needs; and that single, custodial parents received more dispensations from duty, thereby creating inequities and morale problems.

When we analyze these allegations under the criteria set out in *Mindes v. Seamon*, 453 F.2d 197 (5th Cir. 1971), we find that review should be denied and the defendants' motion to dismiss for failure to state a cause of action must be granted.

Plaintiff's claim, although based on allegations of constitutional infirmity, is not strong. The regulation does not deal with a suspect class and does not unduly impinge on the right to make personal choices concerning marriage. Cf. *Zablocki v. Redhail*, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978). The potential injury to plaintiff if review is refused does not weigh strongly for review as plaintiff is not being denied accrued benefits or incurring punishment.

If this Court were to grant review, there would be interference with the military, but not such that would seriously impede it. The regulation embodies a great deal of military experience in matters of personnel and the military's decision is entitled to deference since the regulation relates to the efficiency of the Army and National Guard.

When we weigh the factors, we find that review should be denied.