S. Simcha GOLDMAN, Jr., Plaintiff,

v.

SECRETARY OF DEFENSE, et al., Defendants.

Civ. A. No. 81–1522.

United States District Court, District of Columbia.

July 10, 1981.

Nathan Lewin, Miller, Cassidy, Larroca & Lewin, Washington, D. C., David J. Butler, Robert A. Smith, Brownstein, Zeidman & Schomer, Washington, D. C., for plaintiff.

Royce C. Lamberth, Asst. U.S. Atty., Washington, D. C., for defendants.

MEMORANDUM OPINION

AUBREY E. ROBINSON, Jr., District Judge.

Before the Court are Plaintiff's Motions for a Preliminary and Permanent Injunction in the above captioned case. Plaintiff is a member of the Orthodox Jewish faith, and is an ordained rabbi. Defendants are the Secretary of Defense and the Secretary of the Air Force, and this action is brought against them in their official capacity. This action arises under the Free Exercise

Clause of the First Amendment to the Constitution. This Court has jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331, 1361, and venue is conferred by 28 U.S.C. § 1391(e). *See, e.g., Stafford v. Briggs,* 444 U.S. 527, 544, 100 S.Ct. 774, 784, 63 L.Ed.2d 1 (1980). The facts, for the purpose of this motion, are set forth below:

## FACTS

Plaintiff is a Captain in the United States Air Force on active duty, and has been stationed at the March Air Force Base (March AFB) since September 1977. He is currently assigned to the Mental Health Clinic of the Air Force Regional Hospital at March AFB, where he serves as a clinical psychologist.

Plaintiff is an Orthodox Jew. Consistent with the requirements of Orthodox Jewish practice, Plaintiff wears a skull cap, or yarmulke, at all times. He wore a skull cap prior to his tenure with the Air Force, and has consistently complied with his religious requirement from May 1977 to present.

Until May of 1981, Plaintiff wore his yarmulke while on duty and in uniform without incident; no objections were raised by any of his superior officers. On May 8, 1981, however, Plaintiff was informed by Colonel Joseph Gregory, the Hospital Commander at March AFB, that Air Force Regulation (AFR) 35–10 did not permit the wearing of a yarmulke by Air Force personnel while they were in uniform. Colonel Gregory ordered Plaintiff to stop wearing his yarmulke while in uniform at all places at March AFB except for the Regional Hospital. Plaintiff explained the nature and significance of the religious observance, and requested permission from Colonel Gregory to continue wearing his yarmulke at all times. Plaintiff's request was denied. Plaintiff contacted counsel, who attempted to resolve the dispute informally. This proved unsuccessful.

On June 23, 1981, Colonel Gregory ordered Plaintiff to cease wearing his yarmulke while in uniform at all places at March AFB. Colonel Gregory explained that the wearing of a yarmulke violated

AFR 35–10 and, despite Plaintiff's explanations regarding the nature and importance of his religious observances, refused to reconsider his order. At the time of Colonel Gregory's order, in an effort to forestall confrontation, Plaintiff requested permission to report for duty in civilian clothing so that his wearing of a skull cap would not conflict with the Colonel's interpretation of AFR 35–10. This request was denied.

On June 24, 1981, following Plaintiff's refusal to remove his yarmulke and comply with Colonel Gregory's order, Plaintiff was given a letter of reprimand and has been threatened with additional sanctions, including a court-martial. At Plaintiff's request, enforcement and processing of the letter of reprimand and resulting punitive measures were delayed until June 29, 1981, the date upon which Plaintiff's military area defense counsel was scheduled to return to March AFB. On June 25, 1981, Plaintiff was informed by Colonel Gregory that he had decided to withdraw a positive recommendation he had submitted in favor of Plaintiff's application for a one year extension of his service in the Air Force, and had, that day, submitted a negative recommendation on that application. On June 30, 1981, Plaintiff was informed that formal processing of the letter of reprimand was underway. On July 2, 1981, Plaintiff applied for a Temporary Restraining Order enjoining AFR 35–10 to prohibit Plaintiff from wearing a yarmulke while in uniform. After a hearing, this Court granted Plaintiff's request, issued the Order, and required Defendants to show, on July 10, 1981, why a Preliminary Injunction should not be issued.

Prior to the hearing held this date, Defendants submitted an affidavit by Major General Herbert L. Emanuel. This affidavit explains the following:

AFR 35–10 states that "Air Force members will wear the Air Force Uniform while performing their military duties... members will wear only the uniform items as prescribed by this regulation." According to General Emanuel, AFR 35–10 therefore precludes wearing "unauthorized items,"

such as a yarmulke, while in uniform, and does not permit Air Force personnel to wear civilian clothing while on duty. However, AFR 35–10 1–8(a) provides that "Major commanders may approve the optional wear of civilian clothing on duty when it is in the best interest of Air Force." Explaining the Air Force's position in the instant case, General Emanuel states:

The Air Force is a uniformed service whose primary mission is to fly and to fight or to be ready to fight. A basic and fundamental keystone to an effective fighting force is discipline and espirit de corps in its enlisted and its commissioned personnel. Pride in the proper wear of the military uniform by all military personnel is absolutely essential to the maintenance of proper discipline and to high morale and espirit de corps.... Violations of uniform dress and appearance standards is especially destructive to discipline and espirit de corps when the violator is a commissioned officer.

Air Force Regulation 35–10 mandates compliance with the dress and appearance standards set forth therein. The standards consist of four elements—neatness, cleanliness, safety and military image. The latter element is particularly important because other people draw certain conclusions about the individual and the service based on what they see. Our appearance must instill confidence and leave no doubt that all Air Force people respect and live by a common standard and are responsive to military order and discipline. By entering the Air Force, all of our people voluntarily agree to live and work by a set of standards that are a part of our way of life. In view of our mission responsibilities, we cannot afford to accept less than total commitment. The military's ability to recruit and replenish itself depends, to a large extent on the public perception and support of

the civilian populace. In our view, public support and confidence is most readily given to institutions which instill confidence. Our appearance standards project an image of strength and reliability consistent with the tradition of a sharp, neat airman.

## ISSUES PRESENTED

■ Plaintiff has filed Motions for Preliminary and Permanent Injunctions, seeking to preclude the Air Force from enforcing AFR 35–10 as it relates to the wearing of a skull cap for religious reasons. The Court finds that it cannot resolve the Motion for a Permanent Injunction, because there are certain material facts still in dispute.[1] A status call will be held on July 15, 1981, to establish a date for a hearing. Thus, the only issue before the Court is whether Plaintiff is entitled to Preliminary Injunctive relief.

## ANALYSIS

■ The standards that govern this Court's determination of whether a Preliminary Injunction should issue are those set forth in *WMATA v. Holiday Tours*, 559 F.2d 841 (D.C.Cir.1977) and *Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921 (D.C.Cir.1958). The Court must consider (1) whether Plaintiff has demonstrated that he will ultimately prevail on the merits; (2) whether Plaintiff will suffer irreparable harm absent injunctive relief; (3) whether such relief will harm third parties; and (4) whether the public interest favors the issuance of injunctive relief pending a determination of the merits.

### I. Likelihood of Success on the Merits

For Plaintiff to prevail on the merits, he must show that the enforcement of AFR 35–10, as applied in this case, violates the Free Exercise Clause of the First Amend-

---

1. At the hearing, the Air Force indicated that they wish to discover whether wearing a yarmulke is in fact a requirement of the Orthodox Jewish faith. Moreover, the Court is unpersuaded by the affidavit presented by the Air Force explaining its position in the instant case.

Since the governmental interest in the enforcement of AFR 35–10, as applied in the instant litigation, must be ascertained prior to final adjudication of the merits, live testimony as to the nature and scope of that interest is crucial.

ment to the Constitution. Based on the evidence presented thusfar, there is a substantial likelihood that Plaintiff will ultimately succeed. The type of review relevant to this case was recently enunciated by the Supreme Court in *Rostker v. Goldberg,* 453 U.S. 57, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981). In that case, the Court held that Military Selective Service Act, which required men between the ages of 18 and 26 to register with the Selective Service but did not contain a similar requirement for women, did not violate the Fifth Amendment. There, as here, the United States urged the Court to apply the "rational relationship" test. The Court's response thereto provides this Court with the standard of review applicable here. Justice Rehnquist stated for the Court:

> The Solicitor General argues, largely on the basis of the foregoing cases emphasizing the deference due Congress in the area of military affairs and national security, that this Court should scrutinize the MSSA only to determine if the distinction drawn between men and women bears a rational relationship to some legitimate governmental purpose, and should not examine the Act under the heightened scrutiny with which we have approached gender-based discrimination. We do not think that the substantive guarantee of due process or certainty in the law will be advanced by any further "refinement" in the applicable tests as suggested by the government. Announcing degrees of "deference" to legislative judgments, just as levels of "scrutiny" which this Court announces that it applies to particular classifications made by a legislative body, may all too readily become facile abstractions used to justify a result. *In this case the courts are called upon to decide whether Congress, acting under an explicit constitutional grant of authority, has by that action transgressed an explicit guarantee of individual rights which limits the authority so conferred. Simply labelling the legislative decision "military" on the one-hand*

*or "gender-based" on the other does not automatically guide a court to the correct constitutional result.* (citations omitted) (emphasis added)

453 U.S. at 69–70, 101 S.Ct. at 2653–54.

As in *Rostker,* the parties in this litigation disagree as to the "applicable test." Plaintiff would have the Court apply the "compelling state interest test" which is generally applicable to Free Exercise Clause litigation. *See Wisconsin v. Yodor,* 406 U.S. 205, 220–221, 92 S.Ct. 1526, 1535–1536, 32 L.Ed.2d 15 (1972) and its progeny. The United States would have this Court apply the "rational relationship" test rejected by the Court in *Rostker.* Ultimate adjudication of this litigation does not turn on either of the tests advanced by the parties. Rather, the issue presented here is one of authority. Has the Air Force, by enforcing AFR 35–10 to preclude Plaintiff from wearing his skull cap, "transgressed an explicit guarantee of individual rights which limits the authority so conferred." *Rostker v. Goldberg,* 453 U.S. at 70, 101 S.Ct. at 2654. Resolution of this action thus requires an understanding of the parameters of both the Air Force's authority to impose uniformity[2] and an individual's right to freely exercise his religion.

The Court in *Rostker* summarized the military's authority over its "specialized community," and emphasized the "deference due congressional choices among alternatives in exercising congressional authority to raise and support armies and make rules for their governance." *Id.* The instant action is distinct from *Rostker,* however, because an Air Force Regulation, not a statute, is at issue here. While the Court understands that the statutory authority supporting this regulation is undisputed, it is nevertheless clear that the regulation was not passed as an Act of Congress "by a coequal branch of government whose members take ... [an oath] ... to uphold the Constitution." *Id.* at 64, 101 S.Ct. at 2651. While the degree of deference afforded the MSSA is not applicable in the instant litigation, due deference must be

---

**2.** The need for uniformity is the only interest cited by the Air Force in support of its position.

accorded. *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). This deference, however, cannot and does not permit a court to abdicate its constitutional responsibilities. *Rostker v. Goldberg*, 453 U.S. at 70, 101 S.Ct. at 2654.

Moreover, while the "congressional exercise of authority is at its apogee" in some cases involving the military, *id.*, this cannot be "invoked as a talismanic incantation to support any exercise of . . . power." *U.S. v. Robel*, 389 U.S. 258, 263, 88 S.Ct. 419, 423, 19 L.Ed.2d 508 (1967). The scope of the Air Force's authority depends upon the relationship between the act being regulated and the compelling military interest in a highly competent Air Force "to fight or be ready to fight" wars. *See Rostker v. Goldberg*, 453 U.S. at 70, 101 S.Ct. at 2654, quoting from *U.S. ex rel. Toth v. Quarles*, 350 U.S. 11, 17, 76 S.Ct. 1, 5, 100 L.Ed. 8 (1954). The affidavit of Major General Emanuel implies that permitting Plaintiff to wear his yarmulke will crush the spirit of uniformity, which in turn will weaken the will and fighting ability of the Air Force. If, in the unlikely event that the allegations contained in that affidavit are substantiated by subsequent development of the facts, then the authority of the Air Force in the instant case will "be at its apogee."

■ Plaintiff has an explicit Constitutional guarantee that "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof; . . ." U.S.Const. amend. I. There can be no doubt that Plaintiff's insistence on wearing a yarmulke is motivated by his religious convictions, and is therefore entitled to First Amendment protection. *Thomas v. Review Bd. of Indiana Empl. Sec. Div.*, 450 U.S. 707, 714–719, 101 S.Ct. 1425, 1430–1431, 67 L.Ed.2d 624 (1981). Moreover, it is beyond dispute that

> the state may justify an inroad on religious liberty by showing that it is the least restrictive means of achieving some compelling governmental interest. However, it is still true that "[t]he essence of all that has been said and written on the subject is that only those interests of the

highest order can overbalance legitimate claims to the free exercise of religion." *Wisconsin v. Yodor, supra*, 406 U.S. at 215, 92 S.Ct. at 1533.

*Id.*, 450 U.S. at 716, 101 S.Ct. at 1431. Plaintiff has made a substantial showing that he is likely to prevail on the merits.

## II. Irreparable Harm

Should this Court deny injunctive relief, Plaintiff would in all likelihood suffer irreparable harm. He would be faced with a dubious choice indeed; complying to the dictates of his religion or facing the possibility of imminent court-martial. Because of the seriousness of the First Amendment allegations, and resulting pressure on Plaintiff to abandon his religious observances, injunctive relief is appropriate.

## III. Harm to Third Parties

Defendants have made no showing that any third parties would be harmed by preliminary injunctive relief.

## IV. The Public Interest

The public interest requires protecting individuals who assert their constitutionally protected rights.

## IV. Conclusion

The standards enunciated in *WMATA v. Holiday Tours*, 559 F.2d at 843, require the issuance of a Preliminary Injunction in the instant case. An appropriate Order follows this Memorandum Opinion.

### ORDER

Upon consideration of Plaintiff's Motions for Preliminary and Permanent Injunctions, the Opposition thereto, the hearing held this date, the Memorandum Opinion issued this date, and the entire record herein, it is by the Court this 10th day of July, 1981,

ORDERED, that Plaintiff's Motion for a Preliminary Injunction be and hereby is GRANTED; and it is

FURTHER ORDERED, that Plaintiff's Motion for a Permanent Injunction be and hereby is CONTINUED; and it is

FURTHER ORDERED, that the parties shall appear at a status call on July 15, 1981, at 9:30 a. m. in Courtroom 9 of the United States Courthouse; and it is

FURTHER ORDERED, that Defendants and all persons acting pursuant to their authority or in concert with them or subject to their control be and hereby are enjoined from enforcing the provisions of AFR 35–10 to prohibit Plaintiff from wearing a yarmulke while in uniform until further order of the Court; and it is

FURTHER ORDERED, that the Air Force shall withdraw the letter of reprimand and negative performance evaluation given Plaintiff, *see Goldman v. Sec. of Defense*, 530 F.Supp. 12 at 13–14 (1981).