779 F.2d 1393
 Guru Sant Singh KHALSA, Plaintiff-Appellant,
v.
Caspar WEINBERGER, Secretary of Defense; John O. Marsh,
Jr., Secretary of the Army; in their official
capacities, and United States of
America, Defendants- Appellees.
 No. 84-5880.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 6, 1985.
Decided May 7, 1985.
As Amended Jan. 3, 1986.
 
 Marvin E. Krakow, Los Angeles, Cal., for plaintiff-appellant.
 Thomas R. Folk, Dept. of Army, Washington, D.C., Dzintra Janavs, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before BOOCHEVER and BEEZER, Circuit Judges, and CARROLL,* District Judge.
 ORDER
 The Opinion and concurrence in the above matter, published at 759 F.2d 1411 (1985), are being amended in accordance with the attached Amended Opinion and partial concurrence and dissent.
 AMENDED OPINION
 BEEZER, Circuit Judge:
 
 
 1
 Appellant, a member of the Sikh religion, sued the Army for refusing to process his enlistment application because he could not comply with Army appearance regulations. The district court dismissed the suit on the ground that such regulations are not subject to judicial review. Appellant contends that the regulations are reviewable, that they were amended in violation of the Administrative Procedure Act, and that they violated his First and Fifth Amendment rights. We affirm.
 
 
 2
 * FACTS
 
 
 3
 Practicing Sikhs must wear unshorn head and facial hair and iron bracelets, and are strongly encouraged to wear turbans. Army Regulation 670-1 requires soldiers to cut their hair, shave, and wear only specified types of jewelry and headgear. From 1958 to 1974, the Army exempted conscripted Sikhs from these regulations. In 1974, the Army expanded the exemption to cover enlisted Sikhs.
 
 
 4
 In the late 1970's, the Army received requests from other groups for similar exemptions. It reviewed the problem and concluded that allowing exemptions for numerous groups would adversely affect the Army's discipline, morale, esprit de corps, and public image. The Army also evaluated the impact of beards and long hair on the effectiveness of gas masks, and concluded that they impair the ability of U.S. troops to survive chemical attacks by aggressor forces. The Army therefore amended its appearance regulations in 1981 to eliminate the blanket exemption for Sikhs. It apparently retained procedures for granting individual exemptions based on case by case evaluations of need. Neither the original appearance regulations nor the amendments were published in the Federal Register. The amendments did not apply to the approximately 15 Sikhs then on active duty.
 
 
 5
 In November 1982, appellant Guru Sant Singh Khalsa, a Sikh, attempted to enlist. The Army refused to process his application. Appellant then met with Colonel Hunt, an attorney with the Army Recruiting Command. Appellant informed Hunt that although he still wanted to enlist, he could not obey the Army's appearance regulations. Hunt replied that Khalsa could not enlist because he would be unable to take the statutory enlistment oath promising to obey orders. See 10 U.S.C. Sec. 502. Appellant's request for an individual exemption was denied.
 
 
 6
 Appellant sued the Army, alleging violations of the Administrative Procedure Act and his First and Fifth Amendment rights. The Army moved to dismiss or, in the alternative, for summary judgment. Appellant responded in part by requesting more time to complete discovery. The district judge dismissed the case for lack of subject matter jurisdiction after concluding that the Army's appearance regulations are not subject to judicial review. Khalsa appeals.
 
 II
 ANALYSIS
 A. REVIEWABILITY OF CLAIMS
 
 7
 Appellant contends that the district court applied the wrong legal standard in determining reviewability, that it erred in defining and weighing the various factors that determine such reviewability, and that it improperly decided the issue without allowing appellant adequate time to complete discovery.
 
 
 8
 In concluding that the Army's appearance regulations are not subject to judicial review, the district court erroneously dismissed the case for lack of subject matter jurisdiction. Rather, the doctrine of limited reviewability of certain military regulations and decisions is a matter of justiciability, analogous to the political questions doctrine. Although subject matter jurisdiction may indeed exist, the claim may prove unsuitable for review by a court acting in its traditional judicial role.[1] The distinction between dismissal on the grounds that the federal courts lack subject matter jurisdiction and a decision that the plaintiff has not stated a claim to relief because of a prudential judgment that the military's decision should not be reviewed in a judicial forum is an important one.
 
 
 9
 However we conclude that, in this particular case, the district court's error was harmless. The district court's construction of the doctrine of limited reviewability of military matters as a doctrine of subject matter jurisdiction was understandable in light of decisions of this court using the word "jurisdiction" loosely to refer to reviewability of a claim involving a military decision.[2] More importantly, the district court applied the proper analytical test for determining whether the military regulation challenged in this case was subject to judicial review. The court's characterization of this test as a matter of subject matter jurisdiction, rather than a prudential doctrine of justiciability, did not prevent it from reaching the appropriate result. We may affirm the district court on any basis fairly supported by the record. City of Las Vegas v. Clark County, 755 F.2d 697, 701 (9th Cir.1985).
 
 
 10
 This court reviews de novo a dismissal for failure to state a claim upon which relief can be granted. Unt v. Aerospace Corp., 765 F.2d 1440, 1447 (9th Cir.1985).
 
 1. Applicable Test for Reviewability
 
 11
 Appellant contends that the district court applied the wrong legal test in deciding the reviewability of his claims. Since the Supreme Court has not spoken on this issue, the court applied the test first established in Mindes v. Seaman, 453 F.2d 197 (5th Cir.1971). The Mindes test has been adopted by seven other federal circuits, including ours. Note, Judicial Review of Constitutional Claims Against the Military, 84 Col.L.Rev. 387, 397, 402 (1984) (noting that eight circuits have adopted the Mindes test, and that the Third and District of Columbia Circuits have not followed it); Wallace v. Chappell, 661 F.2d 729 (9th Cir.1982), rev'd on other grounds, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) (expressly adopting the Mindes test); Gonzalez v. Department of the Army, 718 F.2d 926, 929-30 (9th Cir.1983) (applying Mindes test). Appellant claims that the Mindes test is not applicable to this case for several reasons.
 
 
 12
 a. Internal Decisions
 
 
 13
 First, appellant claims that the Mindes test only determines the reviewability of "internal " military decisions, and that the Army appearance regulations are not "internal" in scope because they effectively prevent certain civilians from enlisting. We need not decide whether the supposed dichotomy between "internal" and "non-internal" regulations controls the choice of test. Even if it does, Army appearance regulations are "internal" for two reasons.
 
 
 14
 First, all three cases from Mindes circuits deciding the reviewability of enlistment regulations have applied the Mindes test to find such regulations nonreviewable. See Lindenau v. Alexander, 663 F.2d 68 (10th Cir.1981); West v. Brown, 558 F.2d 757 (5th Cir.1977), cert. denied, 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 520 (1978); Henson v. Alexander, 478 F.Supp. 1055 (W.D.Ark.1979). If, as in the three cited decisions, regulations expressly and directly prohibiting the enlistment of certain classes of civilians are "internal" for Mindes purposes, regulations that affect civilians only by indirectly preventing them from enlisting cannot be considered less "internal" for that purpose.
 
 
 15
 Second, if regulations governing soldiers' appearance are not "internal," then no Army regulations are "internal." Almost any regulation may cause a particularly sensitive civilian to decide that he or she could not take the statutory enlistment oath to follow all orders.
 
 
 16
 We hold that Army appearance regulations are "internal."
 
 
 17
 b. Conflict with Recent Cases
 
 
 18
 Second, appellant asserts that Rostker v. Goldberg, 453 U.S. 57, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981), and Callahan v. Woods, 736 F.2d 1269 (9th Cir.1984), require a judicial determination that the military properly exercised its discretion in making the regulations. According to appellant, the proper exercise of discretion involves giving reasoned consideration to the need for such regulations and the possibility of making exceptions, and considering alternative methods of serving legitimate state interests in a way that minimizes the burden on the free exercise of religion. It is unclear how these requirements would fit into the Mindes framework.[3]
 
 
 19
 Rostker upheld a federal statute that forced men but not women to register for possible conscription. Since Rostker involved a congressional statute rather than a military action, regulation or decision, the power of the federal courts to review the challenged rule was not even addressed by the Court. See Marbury v. Madison, 1 Cranch 137, 2 L.Ed. 60 (1803). Moreover, Rostker was decided before the Ninth Circuit adopted the Mindes test in Wallace v. Chappell, and neither that case nor more recent authorities have referred to Rostker as altering or adding to the Mindes test. See, e.g., Gonzalez v. Department of the Army, supra; Note, Judicial Review of Constitutional Claims Against the Military, 84 Colum.L.Rev. 387 (1984).
 
 
 20
 Similarly, Callahan was an appeal from a summary judgment upholding a non-military regulation requiring the use of social security numbers to receive public assistance. The plaintiff objected to the rule because his religious beliefs forbade him from being identified by number. The reviewability of the regulation was never in question. To the extent that the Callahan court's insistence on weighing the costs of exempting certain individuals from compliance with the regulation may be relevant to the merits here, there is another case more directly on point that will be discussed later in this opinion.
 
 
 21
 We hold that Rostker and Callahan do not alter this circuit's test for the reviewability of military regulations.
 
 
 22
 c. Factual Determinations
 
 
 23
 Third, appellant claims that the district court had to decide various disputed factual matters in applying the Mindes test. A careful reading of the court's order, however, reveals that it did not rely on disputed facts, but only cited the Army's conclusions on the kinds of military judgments that courts have consistently refused to review. The Tenth Circuit, for example, declined to second-guess the military's decision to restrict the enlistment of single mothers, stating:
 
 
 24
 It is clear from Major General Williams' affidavit that the Army has experimented in this area and this regulation is what the Army concluded is necessary for the best interest of the armed forces. We agree that "our review would entail a sizeable leap into an area in which the only compass is accumulated military experience." West v. Brown, 558 F.2d at 761.
 
 
 25
 Lindenau v. Alexander, 663 F.2d at 74.
 
 
 26
 Moreover, the fact that the Mindes test requires courts to make a preliminary assessment of the strength of a claim without the benefit of a full trial has led to some criticism of the test. See, e.g., Dillard v. Brown, 652 F.2d 316, 323 (3d Cir.1981) (declining to adopt the Mindes test for this reason); Note, Judicial Review of Constitutional Claims Against the Military, supra; Note, Federal Judicial Review of Military Administrative Decisions, 51 Geo.Wash.L.Rev. 612 (1983). There is no authority from any Mindes circuit, however, for refusing to apply the test on that ground. See Nieszner v. Mark, 684 F.2d 562, 564 (8th Cir.1982) ("We do not agree with the Third Circuit's conclusion that the Mindes analysis requires the court to consider the merits of a case in making a threshold determination of reviewability"), cert. denied, 460 U.S. 1022, 103 S.Ct. 1273, 75 L.Ed.2d 494 (1983).
 
 
 27
 We hold that the district court did not improperly consider disputed facts in deciding that military appearance regulations are nonreviewable. We also hold that the Mindes test is the proper standard for determining the reviewability of the Army's appearance regulations.
 
 
 28
 2. Reviewability of Army Appearance Regulations Under Mindes
 
 
 29
 Appellant claims that the district judge erred in defining and weighing the Mindes factors. As modified by the Ninth Circuit, the Mindes test declares that
 
 
 30
 an internal military decision is unreviewable unless the plaintiff alleges (a) a violation of [a recognized constitutional right], a federal statute, or military regulations; and (b) exhaustion of available intraservice remedies. If the plaintiff meets both prerequisites, the trial court must weigh four factors to determine whether review should be granted:
 
 
 31
 (1) The nature and strength of the plaintiff's claim....
 
 
 32
 (2) The potential injury to the plaintiff if review is refused.
 
 
 33
 (3) The extent of interference with military functions.
 
 
 34
 (4) The extent to which military discretion or expertise is involved.
 
 
 35
 Wallace v. Chappell, 661 F.2d at 732-33 (emphasis in original).
 
 
 36
 The trial court acknowledged that appellant met the requirements of the first prong of the Mindes test by alleging a violation of his constitutional rights and exhausting all intraservice remedies. The four factors of the second prong will be considered in more detail below.
 
 
 37
 a. Nature and Strength of Claims
 
 
 38
 The district court cursorily noted that "appellant alleges recognized constitutional claims of the type that may be reviewed," but concluded that the other three factors "militate strongly against reviewability." Appellant correctly points out that the court should also have weighed the strength of his claim. He implies that the court failed to do so to avoid making factual determinations, which he alleges are inappropriate on a motion to dismiss or for summary judgment, and that if the court had reached the issue it would have found that appellant had a very strong claim. These arguments are unpersuasive. If the district court had considered the strength of appellant's claims it would have concluded, without having to make any factual determinations, that appellant's claims were not strong.
 
 
 39
 In Mindes, the court noted that "[c]onstitutional claims, normally more important than those having only a statutory or regulatory base, are themselves unequal in the whole scale of values--compare haircut regulation questions to those arising in court-martial situations which raise issues of personal liberty." 453 F.2d at 201. See also Wallace v. Chappell, 661 F.2d at 733 (citing this portion of Mindes). Appellant's claims are therefore on the least significant end of the constitutional scale.
 
 
 40
 More importantly, even if the district court had reached the merits, appellant would have lost. In Sherwood v. Brown, 619 F.2d 47 (9th Cir.), cert. denied, 449 U.S. 919, 101 S.Ct. 317, 66 L.Ed.2d 147 (1980), this court considered the constitutionality of the Navy's discharge of a Sikh who refused to replace his turban with a helmet. The panel applied the highest possible level of scrutiny. It concluded that the Navy's interest in the safety of its sailors around naval machinery and in combat constituted a compelling state interest, and that requiring all naval personnel to wear helmets was the least restrictive alternative. Id. at 48.
 
 
 41
 If the district court erred at all in applying the first Mindes factor, it erred by failing to expressly recognize the weakness of appellant's claims.
 
 
 42
 b. Potential Injury to Appellant
 
 
 43
 The district court found that "the potential injury to plaintiff if review is refused is not substantial. Plaintiff will lose the opportunity to enlist in the Army, but will be deprived of no constitutionally cognizable liberty or property interest in the Army's refusal to enlist him."
 
 
 44
 Appellant cites Thomas v. Review Board, 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981), which overturned a state's denial of unemployment compensation to a worker who quit his job for religious reasons, to show that denial of enlistment is a substantial injury. The Court in Thomas said:
 
 
 45
 [w]here the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial.
 
 
 46
 450 U.S. at 717-18, 101 S.Ct. at 1432. Similarly, appellant cites Callahan v. Woods, supra, where this court held that requiring applicants for public assistance to furnish social security numbers "substantially interferes with the free exercise of [appellant's] religious beliefs." 736 F.2d at 1273.
 
 
 47
 If there were no more apposite authority, Thomas and Callahan could be read to support appellant's position. However, there are three cases directly on point that give little weight to the injury flowing from denial of enlistment. See Lindenau v. Alexander, 663 F.2d at 74 (noting that "there is no right to enlist"); West v. Brown, 558 F.2d at 760; Henson v. Alexander, 478 F.Supp. at 1058 ("[t]he potential injury to plaintiff [from being denied enlistment] if review is refused does not weigh strongly for review as plaintiff is not being denied accrued benefits or incurring punishment"). The district court did not err in holding that appellant will suffer little legally cognizable injury from having to choose another career.
 
 
 48
 c. Interference with Military Functions and Extent of Military Discretion or Expertise
 
 
 49
 The third and fourth Mindes factors "present a single inquiry, focusing on disruption of military functions and distortion of factors such as troop morale which are important to the operation of the military." Lindenau v. Alexander, 663 F.2d at 74 (quoting West v. Brown, 558 F.2d at 760).
 
 
 50
 Appellant challenges the district court's finding that there would be significant interference with military functions and discretion. He claims that the court should not have relied on Army affidavits regarding disputed facts such as interference with military morale, discipline and defense against chemical weapons, as well as the Army's ability to accommodate Sikhs. He also asserts that the court itself should have considered whether the Army could accommodate his religious beliefs without undue interference with its primary functions. As noted above, the former argument is incorrect because the district judge did not decide any factual issues, but only summarized military conclusions that he was not free to second-guess.[4] See Lindenau v. Alexander, 663 F.2d at 74; West v. Brown, 558 F.2d 760-61 (declining to review the Army's judgment about enlistment restrictions as set forth in an Army affidavit); Henson v. Alexander, 478 F.Supp. at 1058 ("the [enlistment] regulation embodies a great deal of military experience in matters of personnel and the military's decision is entitled to deference since the regulation relates to the efficiency of the Army and National Guard"). The latter argument is incorrect because it rests on Rostker, which has already been distinguished. The district court did not err in citing the Army's affidavits and finding that the third and fourth Mindes factors militate against judicial review.
 
 
 51
 We affirm the district court's holding that a weighing of all the Mindes factors establishes the nonreviewability of appellant's claims.
 
 
 52
 B. CONSIDERATION OF MATTERS OUTSIDE THE PLEADINGS
 
 
 53
 Appellant again asserts that factual issues going to the merits of the case, particularly assertions presented in military affidavits, were necessarily resolved in determining the reviewability issue, that such is improper on a motion to dismiss, and that the district court's order should therefore be treated on appeal as a grant of summary judgment. See Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir.1983); Fed.R.Civ.P. 56. This argument is meritless.
 
 
 54
 As noted earlier, the district court did not actually decide any factual disputes on the merits. As appellant himself complains, the district court did not weigh the strength of his claim. The other part of the Mindes test that involves some weighing of factual assertions is the determination of interference with military functions and discretion. The court could not "second-guess" the Army's judgment on matters related to military expertise, judgment, and experience.
 
 
 55
 Although the Mindes test does require courts to make a preliminary assessment of some factual assertions, perhaps including matters outside the pleadings, this does not rise to the level of adjudication of disputed facts. A contrary holding would mean that no Mindes challenge to a trial court's review of a military decision could ever be disposed of by a motion to dismiss, prior to a full determination on the merits.
 
 C. ADMINISTRATIVE PROCEDURE ACT CLAIM
 
 56
 Appellant also claims that the district court erred in not addressing his statutory claim under the Administrative Procedure Act. However, the Mindes test also applies to statutory claims against the military. The only substantial difference between the district court's analysis of appellant's constitutional claims and the proposed analysis of the APA claim is that constitutional claims give more weight to an argument for reviewability. See Mindes v. Seaman, 453 F.2d at 201. If the court did err in not addressing the issue, it was harmless error.
 
 III
 CONCLUSION
 
 57
 Appellant expresses understandable concern that if the Army prevents him from enlisting and the courts refuse to review that decision, he will be deprived of any means whatsoever of challenging the Army's appearance regulations. It is true that his only recourse may be through the political process, a path that those concerned with military regulations prohibiting the wearing of a yarmulke are now pursuing. Although this may seem inadequate to some, every case from a Mindes circuit considering the reviewability of enlistment regulations or decisions has declined review rather than deciding the question on the merits. See Lindenau v. Alexander, supra; West v. Brown, supra; Henson v. Alexander, supra. These cases also make clear that as long as appellant does not enlist, such regulations do not interfere with the free exercise of his religion. Moreover, even if the district court had reached the merits, it would have been compelled to rule against appellant. See Sherwood v. Brown, supra. Mr. Khalsa is free to dress and groom in accordance with his religious convictions. He is not free to join the military if he cannot comply with military rules.
 
 
 58
 AFFIRMED.
 
 
 59
 BOOCHEVER, Circuit Judge, concurring in part, dissenting in part.
 
 
 60
 I agree with the majority's holding that the district court erred in dismissing the case for lack of subject matter jurisdiction. Rather than ruling on the issue of justiciability, however, I would remand so that the district court can consider the case under the standard enunciated by the majority opinion. Initially the trial court should weigh the factors described in Mindes in order to determine whether the claim is reviewable. The Mindes appellate court did not attempt to determine the issue of justiciability. After setting forth the criteria to be used in making such a decision it stated: "We do not intimate how these factors should be balanced in the case sub judice. That is the trial court's function." 453 F.2d at 202.
 
 
 61
 Moreover, I believe that in exercising that discretion a challenge involving core religious beliefs must be considered as involving a strong claim. The majority, in applying the first Mindes factor--the nature and strength of plaintiff's claims--seems to belittle the seriousness of plaintiff's claims that the Army's appearance regulations interfere with basic principles of the Sikh religion. The majority considers plaintiff's claims as "not strong," indeed, as being "on the least significant end of the constitutional scale." That language trivializes a basic tenent of the Sikh religion and places that tenent on the same level as a concern for personal appearance. The majority's quote from the Mindes case, 453 F.2d at 201, is out of context. Its reference to a haircut regulation obviously was not applicable to sincere religious beliefs, but to mere personal appearance preferences, which were contrasted with loss of freedom arising from "court martial situations." I have little doubt that the Mindes court would have considered strongly held religious beliefs as among the weightier constitutional claims to be valued.
 
 
 62
 The majority's treatment of the second Mindes factor--the potential injury to Khalsa if review is refused--is also misdirected. The majority's cursory conclusion that Khalsa has no right to enlist harkens back to the discredited "right-privilege dichotomy."[1] See Van Alstyne, "The Demise of the Right-Privilege distinction in Constitutional Law," 81 Harv.L.Rev. 1439 (1968). As the Supreme Court stated in Thomas v. Review Board, 450 U.S. 707, 717-18, 101 S.Ct. 1425, 1432, 67 L.Ed.2d 624 (1981):
 
 
 63
 Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists.
 
 
 64
 The potential injury to Khalsa and to the other Sikhs may be significant, especially in view of what appears to be a tradition among Sikhs of service in the armed forces. See New York Times, May 26, 1985, Part 1, at 9, col. 1 (noting the long and honorable tradition of service by Sikhs in India).
 
 
 65
 In addition, the decision as to what facts should be accepted as unreviewable military judgments should first be made by the trial court under the appropriate non-jurisdictional standard. For example, whether beards are incompatible with proper use of a gas mask is a type of decision that a trial court may well consider to be subject to proof upon a suitable challenge, particularly since the Army appeared to have found no problems in this regard during the many years Sikhs were exempted from the regulation in question. Similarly, the trial court may require a hearing on the question of whether the army is being inundated with requests for similar exemptions from other religious groups.
 
 
 66
 I am also concerned that the majority goes too far in granting latitude to military decisionmaking. Cf. Goldman v. Secretary of Defense, 739 F.2d 657, 658 (D.C.Cir.) (Starr, J., dissenting from denial of suggestion to hear case en banc) ("For notwithstanding the broad latitude rightly vested in those charged with defending the Nation's security, I am unable to agree that the needs of the military warrant vitiating the very liberties which the armed services have valiantly defended in the two centuries of the Nation's history."), cert. granted, --- U.S. ----, 105 S.Ct. 3475, 87 L.Ed.2d 612 (1985). Nevertheless, I feel that we are bound by the authorities cited in the opinion in our review of military decisions. If we were not, I would be inclined to apply the same standard used by the Supreme Court to review congressional decisionmaking about the military, and determine whether the military, in exercising its discretion, properly examined alternatives to the regulations at issue in an effort to minimize the burden on the free exercise of religious beliefs. See Rostker v. Goldberg, 453 U.S. 57, 70-74, 101 S.Ct. 2646, 2654-56, 69 L.Ed.2d 478 (1981) (deferring to Congress' "studied choice" not to draft women); Schlesinger v. Ballard, 419 U.S. 498, 508-10, 95 S.Ct. 572, 577-78, 42 L.Ed.2d 610 (1975) (discussing legislative history as showing Congress' rational basis for establishing different promotion requirements for men and women in the Navy).
 
 
 
 *
 Honorable Earl H. Carroll, United States District Judge for the District of Arizona, sitting by designation
 
 
 [1]
 Review of internal military regulations and decisions by courts raises potential problems of lack of appropriate deference to a unique discipline, set apart from civilian society to perform the special task of national defense. Owing to the distinctive role of the military and the exceptional nature of its organization and activities, the "courts are ill-equipped to determine the impact upon discipline that any particular intrusion upon the military might have." Chief Justice Warren, The Bill of Rights and the Military, 37 N.Y.U.L.Rev. 181, 187 (1962). As with the political questions doctrine, there is also the difficulty of finding judicially manageable standards to justify intervention into internal decisions grounded in military expertise and experience. See Baker v. Carr, 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962); Goldwater v. Carter, 444 U.S. 996, 998, 100 S.Ct. 533, 534, 62 L.Ed.2d 428 (1979) (Powell, J., concurring). Allowing the litigation to proceed forward could interfere with military discipline and efficient operations by requiring superior officers to submit to examinations of their reasons for sensitive decisions concerning enlisted personnel or the adoption of uniform standards and regulations. Gonzalez v. Department of the Army, 718 F.2d 926, 930 (9th Cir.1983); Wallace v. Chappell, 661 F.2d 729, 732 (9th Cir.1982), rev'd on other grounds, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). Accordingly, this court has adopted the rule of Mindes v. Seaman, 453 F.2d 197, 201 (5th Cir.1971), requiring balancing of several interrelated factors to analyze the substance of the claim against the military in light of the policy reasons behind limited judicial review of military matters
 
 
 [2]
 See Schlanger v. United States, 586 F.2d 667, 671-72 (9th Cir.1978); Arnheiter v. Chafee, 435 F.2d 691, 692 (9th Cir.1970). These decisions did not specify the sense in which the term "jurisdiction" is employed. Because "jurisdiction" has many possible meanings, ranging from subject matter jurisdiction to the power to grant the relief requested, the use of that term in these two decisions should be interpreted as referring to "reviewability" rather than to "subject matter jurisdiction."
 
 
 [3]
 Although appellant cites no authority to support the application of Rostker in cases involving the reviewability of military regulations, our research has uncovered one relevant case. In Goldman v. Secretary of Defense, 530 F.Supp. 12 (D.D.C.1981), a district court in one of the two federal circuits that rejects the Mindes test granted a preliminary injunction against enforcement of an Air Force regulation prohibiting Jewish personnel from wearing skullcaps. The court applied a reviewability test purportedly derived from Rostker. After trial, the same district court granted a permanent injunction against the enforcement of the regulation, again relying on Rostker. Goldman v. Secretary of Defense, 29 Empl.Prac.Guide (CCH) p 32,753 (D.D.C. April 26, 1982), vacated and remanded, 734 F.2d 1531 (D.C.Cir.1984), cert. granted, --- U.S. ----, 105 S.Ct. 3475, 87 L.Ed.2d 612 (1985). The language in the district court's second opinion, which has been harshly criticized, closely resembled appellant's argument here. See Folk, Military Appearance Requirements and Free Exercise of Religion, 98 Mil.L.Rev. 53, 86, (1982) ("the [district court's] Goldman opinion is clearly based on a completely unwarranted interpretation of Rostker's rationale. Also, the approach has no firm basis in logic, in principles of administrative law, or in jurisprudence regarding reviewability of military decisions"). On appeal, the D.C. Circuit vacated the judgment. The appellate court also applied a test purportedly derived from Rostker, although it appears less rigorous than that applied by the lower court. In fact, the D.C. Circuit held that the regulation was justified by the Air Force's interest in the strict enforcement of admittedly arbitrary rules. 734 F.2d at 1540. The Go1dman case is therefore distinguishable on at least two grounds. First, it is from one of the two circuits that rejects the Mindes test, which is the law of this and seven other circuits. We have found no case from a Mindes circuit applying Rostker to determine the constitutionality of military regulations. Second, the D.C. Circuit did not apply appellant's and the district court's strict version of the Rostker test, but instead applied a much more deferential version to uphold a regulation for a reason that is equally applicable to the case at bar. Moreover, although these facts make it unnecessary to consider the wisdom of the D.C. Circuit's approach to reviewability problems, we cannot say we find it very persuasive, for the reasons set forth in the body of this opinion and in the Folk article, supra
 
 
 [4]
 For the purpose of application of the initial Mindes test to determine whether a military action is reviewable, the court is not free to substitute its judgment in matters of military expertise. The degree of deference due to factual assertions by the military is proportionate to the need for the application of military experience, judgment, and expertise in evaluating the assertion. This does not mean a court determining reviewability must invariably accept the military's assertion on a matter, but it does require the court to have a strong basis for not doing so. See Folk, Military Appearance Requirements and Free Exercise of Religion, 98 Mil.L.Rev. 53, 82 (1982). Clearly, for example, a military affidavit alleging that certain minorities should be excluded from the Army because they are mentally or physically inferior to whites would be subject to greater scrutiny by a district court. The affidavits in the instant action concern the military morale and discipline implications of uniform appearance regulations, the practical problems of granting numerous exemptions, and the impact of beards and long hair on the effectiveness of gas masks; matters plainly within the special competence and expertise of the military and not allegations that are palpably untrue or highly questionable
 
 
 [1]
 That distinction was expressed best by Justice Holmes in McAuliffe v. Mayor of New Bedford, 155 Mass. 216, 220, 29 N.E. 517, 518 (1892): "The petitioner may have a constitutional right to talk politics but he has no constitutional right to be a policeman."