John DOE; and Local 3936 of the American Federation of Government Employees, Plaintiffs,

v.

Honorable Donald RICE, Secretary of the United States Air Force; Lt. General Conaway, Chief of the National Guard Bureau; Puerto Rico Air National Guard; William Miranda–Marin, the Adjutant General of the Commonwealth of Puerto Rico; Colonel Manuel A. Guzman of the Puerto Rico Air National Guard; Colonel Gilberto Colon, as Personnel Officer of the Puerto Rico Air National Guard; all officials in their individual and official capacity, Defendants.

Civ. No. 91–1169CCC.

United States District Court,
D. Puerto Rico.

June 6, 1991.

Highway Hotel site is a "facility" under the statute.

## OPINION AND ORDER

CEREZO, District Judge.

This is a civil rights action, brought under 42 U.S.C. §§ 1983 and 1988, in which plaintiff seeks declaratory and injunctive relief from what he considers was his unlawful and arbitrary discharge from the Puerto Rico Air National Guard (PRANG) upon testing positive for the Human Immunodeficiency Virus (HIV). Plaintiff originally moved for a temporary restraining order and a preliminary injunction. The Court denied the issuance of the temporary restraining order and scheduled the preliminary injunction request for a hearing on April 1, 1991. However, as motions to dismiss and/or for summary judgment (*see* docket entries 7 & 9) mainly challenging the jurisdiction of the Court to entertain this action were filed by the various defendants prior to the hearing, the same was vacated in order to allow plaintiff to file his response. Plaintiff having done so, we now address the "jurisdictional" challenges.

We begin by stating the salient facts. Plaintiff John Doe is a Technical Sergeant who has been a member of the Guard since March 1967. Pursuant to the provisions of the National Guard Technicians Act of 1968, he has also held a civilian employment position with the PRANG as a military technician since 1969.

As part of the routine and mandatory medical screening required from all the members of the military since the onset of the AIDS epidemic, serology tests were made on June 1990. On June 26, 1990, he tested positive for the presence of the HTLV–III antibody, which meant that he had been exposed to the HIV virus. This positive result was confirmed with a Western Blot[1] by the epidemiology lab at Brooks Air Force Base in Texas. The results were then notified to the Commander of the PRANG, defendant Colonel Manuel A. Guzmán. Colonel Guzmán issued Special Order AC–73 on September 21, 1990

Nora Vargas, for plaintiffs.

Daniel F. López–Romo, U.S. Atty., Fidel Sevillano, Asst. U.S. Atty., Mayra Maldonado, Dept. of Justice, Commonwealth of Puerto Rico, for defendants.

---

1. This test is typically used to confirm an initial HIV positive result, as this is a more specific and reliable test.

relieving plaintiff from his duties with the PRANG with an honorable discharge and transferring him to the Retired Reserves. In taking this action, defendant Guzmán relied on the Air National Guard Regulation (ANGR) 39–10.

On October 16, 1990, nearly a month after his separation from the Guard, plaintiff was formally notified by defendant Gilberto Colón, the Personnel Officer of the PRANG, that he was no longer eligible to continue in his technician employment due to his discharge from military duty. Accordingly, he was similarly dismissed from his civilian position.

In view of his difficult situation, on December 12, 1990 plaintiff filed a formal grievance with the Adjutant General of the Puerto Rico National Guard, defendant William Miranda–Marín, but this was denied shortly thereafter. On December 13, 1990, plaintiff requested the withdrawal of the Special Order AC–73 from defendant Colonel Guzmán, alleging that the Air National Guard Regulation on which it was based was incorrectly interpreted. No reply to this request was ever received.

Seeking to obtain the relief desired, i.e. reinstatement to both his military and civilian positions in the Guard, plaintiff then filed this action before the Court. Joining him as a plaintiff is the American Federation of Government Employees, a labor union which represents all the technicians employed by the Guard and of which Doe is a member. Named as defendants, apart from Adjutant General Miranda–Marín, Colonel Guzmán and Colonel Colón, are the Honorable Donald Rice, Secretary of the United States Air Force, and Lieutenant General Conaway, Chief of the National Guard Bureau. In his complaint, plaintiff basically asserts: (1) that his discharge was based on an erroneous interpretation and/or application of the relevant regulations (complaint ¶ 39), (2) that he has a property interest in retaining both his military status and civilian position and, therefore, could not be dismissed without the constitutionally required due process (complaint, ¶ 43) and (3) that both his discharge and dismissal were acts of discrimination based on a handicap in violation of his right to the equal protection of the laws (complaint ¶ 48).

In their motions to dismiss and/or for summary judgment, defendants have essentially challenged the authority[2] of the Court to entertain this suit. Noting that this litigation involves a dispute between a member of the military and his superiors, and based on the long-standing doctrine that mandates civilian courts to avoid intervention in internal military affairs (*see e.g. Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), defendants argue that the Court should refrain from reviewing the military actions taken. They further aver that, pursuant to the generally accepted test for determining the reviewability of claims arising incident to military service, plaintiff's claim is clearly non-justiciable.

As the parties have correctly pointed out, the criteria for determining whether a claim incident to military service is reviewable by the civilian courts is the justiciability test first developed by the Court of Appeals for the Fifth Circuit in *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971), later adopted in this circuit in *Pauls v. Secretary of Air Force*, 457 F.2d 294 (1st Cir.1972) and *Peñagarícano v. LLenza*, 747 F.2d 55 (1st Cir.1984). As the Court expressed in *Mindes:*

> [A] court should not review internal military affairs in the absence of (a) an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (b) exhaustion of available intraservice corrective measures.
>
> \* \* \* \* \* \*
>
> A district court faced with a sufficient allegation must examine the substance of

---

**2.** We note that the issue is not one of jurisdiction, as the rationale behind the federal courts policy of restricting review of military matters is one of deference to the special function of the military in our constitutional structure, and not one of lack of judicial power. *See Khalsa v. Weinberger,* 779 F.2d 1393, 1395 (9th Cir.1985).

that allegation in light of the policy reasons behind nonreview of military matters. In making that examination, such of the following factors as are present must be weighed (although not necessarily in the order listed).

1. The nature and strength of the plaintiff's challenge to the military determination. Constitutional claims, normally more important than those having only a statutory or regulatory base, are themselves unequal in the whole scale of values—compare haircut regulations questions to those arising in court-martial situations which raise issues of personal liberty. An obviously tenuous claim of any sort must be weighed in favor of declining review....

2. The potential injury to the plaintiff if review is refused.

3. The type and degree of anticipated interference with the military function. Interference per se is insufficient since there will always be some interference when review is granted, but if the interference would be such as to seriously impede the military in the performance of vital duties, it militates strongly against relief.

4. The extent to which the exercise of military expertise or discretion is involved. Courts should defer to the superior knowledge and experience of professionals in matters such as promotions or orders directly related to specific military functions.

*Mindes* at p. 201–02. We now consider whether Doe's claims survive the *Mindes* analysis.

■ With regard to the first part of the test, plaintiff has alleged in his complaint violations of both his recognized constitutional rights and of the applicable military regulations. Doe has easily satisfied this initial requirement. The situation differs, however, when we consider the second requirement: exhaustion of available intra-service military remedies. Defendants have basically focused their arguments on plaintiff's lack of exhaustion in order to convince the Court that it should decline review. They repeatedly insist that plaintiff could have sought relief from the Air Force Board for Correction of Military Records under 10 U.S.C. § 1552, and that, should the Board determine that plaintiff's nonretention was the consequence of error or injustice, it could then order the correction of his federal records to show that federal recognition has not been withdrawn and could then reinstate the officer in a comparable active federal reserve status, restore his pay, and order compensatory back pay. *See also Peñagaricano*, 747 F.2d at 57. Plaintiff, on the other hand, does not deny his failure to exhaust administrative remedies, but claims that doing so would have been an exercise in futility due to the circumstances of his case.

It must be noted that the requirement of exhaustion of administrative remedies is not an exclusive characteristic of the *Mindes* test, as it is instead a generally recognized principle of administrative law. As recently summarized by the Court of Appeals:

> The exhaustion of administrative remedies doctrine has long been held to mean that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). This doctrine enables the agency to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy and judicial economy. *See McKart v. United States*, 395 U.S. 185, 194, 89 S.Ct. 1657, 1663, 23 L.ed.2d 194 (1969); *Ezratty v. Commonwealth of Puerto Rico*, 648 F.2d 770, 774 (1st Cir.1981). But, where agency proceedings will be futile, such benefits do not accrue. Therefore the exhaustion doctrine "is not to be applied inflexibly." *McGee v. United States*, 402 U.S. 479, 483, 91 S.Ct. 1565, 1568, 29 L.Ed.2d 47 (1971).

*Christopher W. v. Portsmouth School Comm.*, 877 F.2d 1089, 1093–94 (1st Cir. 1989). *See also Com. of Mass. v. Lyng,*

893 F.2d 424, 427 (1st Cir.1990), *Gilbert v. City of Cambridge*, 932 F.2d 51 (1st Cir. 1991), (discussing futility exception). The Supreme Court has further warned that the "[a]pplication of the doctrine to specific cases requires an understanding of its purpose and of the particular administrative scheme involved." *McKart v. United States*, 395 U.S. at 193, 89 S.Ct. at 1662. Not surprisingly, then, it has been concluded that application of the doctrine is, in the final analysis, subject to the discretion of the courts. *See Ezratty v. Commonwealth of Puerto Rico*, 648 F.2d at 774.

We are convinced that the exhaustion requirement as incorporated into the *Mindes* test is not exempted from this general principle. As such, and faced with a claim that the intraservice military remedies available to plaintiff were futile, there is a need for a more profound inquiry to determine whether the "particular administrative scheme involved" in the Board for Correction of Military Records warrants our referral of plaintiff's claim for its initial review or whether the plaintiff should be excused from the requirement to exhaust.

This is not a novel matter. In *Rew v. Ward*, 402 F.Supp. 331 (D.N.M.1975), the Court, confronted with the need to conduct a similar inquiry, identified three factors deemed essential in resolving the matter: (1) the adequacy of the remedy before the Board, (2) whether requiring plaintiff to pursue his administrative remedy will serve the policies underpinning the doctrine and, (3) the government's interest in limited judicial interference in military matters. The Court held that the plaintiff was not required to exhaust the remedy provided by the Board as it was "totally inept" to provide the relief requested. *See Rew*, 402 F.Supp. at 334. That conclusion was reached only after considering extensive evidence concerning the procedural operation of the Board. In this case a hearing would also be required to allow the parties the opportunity to present the evidence on the futility issue. However, plaintiffs must have first met the second prong of the *Mindes* test, before any such evidentiary hearing can be held. We must determine whether they have done so.

The second prong of the *Mindes* test requires that we evaluate the following four elements:

(1) The nature and strength of plaintiffs' challenge to the military determination.

Current policies on the HIV infection, as it relates to the Puerto Rico Air National Guard are found in four documents: Memorandum for the Air Force Surgeon General dated August 4, 1988 and May 16, 1989; Memorandum from the Department of the Air Force dated June 1, 1989 and a Memorandum to All Air Force Nation Guard Medical Units dated July 2, 1989. Plaintiff argues that he was discharged and transferred to the Retired Reserves pursuant to ANGR 39–10 of September 1987, an inapplicable, superceded policy and regulation;[3] that he was notified retroactively of his discharge, that he was never afforded an opportunity to appear at a hearing or be medically evaluated according to procedures and policies in effect at the time of his discharge. That is, Doe contends that he was discharged *solely* because of his HIV serology, in violation of internal military regulation. We thus find that plaintiff has raised serious constitutional issues of due process. This first factor weighs heavily in favor of judicial review.

(2) The potential injury to plaintiff if review is refused.

The loss of his military status has caused John Doe to lose his lifetime career. Besides the financial hardship caused by loss of income which may not be recoverable, plaintiff is losing his medical insurance plan. This more than anything could cause irreparable injury, in light of the progressive, life threatening nature of his illness. His age, forty-two years, and health status would most likely work against him in the

---

**3.** An August 1990 memo on the update on Regulation Correction ANGR 39–10 dated September 15, 1987 states that paragraph 8–26, upon which John Doe was dismissed is no longer applicable. Paragraph 3 of the memo states *HIV* case will no longer follow administrative board procedures and that these cases will be handled through appropriate medical channels.

job market, and finding a health insurer to cover his existing and future medical needs would be next to impossible. Moreover, the loss of his civilian position so late in his career will cause a loss of his future retirement benefits—which he could not recoup. This factor also weighs in plaintiff's favor.

(3) The type and degree of anticipated interference with military function.

Interference per se is insufficient to deny judicial review, inasmuch as there will always be some interference when review is granted. *Mindes, supra* at 201. In the case at bar, the interference will be minimal because the Department of Defense/Air Force have already, through the various memoranda, set out policies and procedures for handling HIV cases. The issue to determine is if the Puerto Rico Air National Guard followed its own directives, and if not, to set this John Doe's plight on the correct path.[4] We do find that review of this claim will not seriously impede the military in the performance of its vital duties. *See Peñagarícano, supra* at 63.

(4) The extent to which the exercise of military expertise or discretion is involved.

Although courts should defer to the superior knowledge and experience of professionals in matters such as promotions and orders directly related to specific military functions, *Mindes, supra* at 202, we find that the fourth *Mindes* factor also tips the balance in John Doe's favor. The plaintiffs have provided evidence of extensive policy statements made by the Air Force regarding the procedures to be followed in evaluating and processing HIV infected personnel. From the face of the statements it appears that the military makes its determinations primarily on the basis of medical criteria. We therefore find that there is no serious need for the exercise of military expertise or discretion inasmuch as the matter involves evaluations by medical experts.

Having concluded that plaintiff clearly satisfies the second prong of the *Mindes* test, an evidentiary hearing is necessary in order for the Court to determine whether

the threshold requirement of exhaustion of administrative remedies is required to be met in this case. Accordingly, an evidentiary hearing is hereby set for June 20, 1990 at 9:30 A.M. in order to consider this matter. The parties are advised that the hearing will deal exclusively with the nature and adequacy of the administrative remedy provided by the Board. They are requested to submit all the evidence pertaining to this matter at that time. The parties are referred to the opinion in *Rew v. Ward, supra,* as an example of the type of inquiry to be made, and the extent of evidence the Court will need to make its determination. Inasmuch as the determination of whether plaintiff's claims are justiciable must await the resolution of this issue, all the remaining matters raised in defendants' motion to dismiss and/or for summary judgment will be held in abeyance pending its final disposition.

SO ORDERED.

---

4. We also note that there was no question regarding John Doe's ability to do his job, or the quality of his performance at the time of his discharge and transfer.