**John DOE; and Local 3936 of the American Federation of Government Employees, Plaintiffs,**

v.

**Honorable Donald RICE, Secretary of the United States Air Force; Lt. General Conaway, Chief of the National Guard Bureau; Puerto Rico Air National Guard; William Miranda–Marin, the Adjutant General of the Commonwealth of Puerto Rico; Colonel Manuel A. Guzman of the Puerto Rico Air National Guard; Colonel Gilberto Colon, as Personnel Officer of the Puerto Rico Air National Guard; all Officials in Their Individual and Official Capacity, Defendants.**

**Civ. No. 91–1169CCC.**

United States District Court,
D. Puerto Rico.

Nov. 6, 1991.

Nora Vargas–Acosta, Vargas & Ramirez Law Offices, Río Piedras, P.R., for plaintiffs.

Asst. U.S. Atty. Fidel Sevillano–del–Río, Daniel F. López–Romo, U.S. Atty., Mayra Maldonado–Colón, Atty., Héctor Rivera–Cruz, Secretary of Justice, Antonio Fiol Matta, Director, Fed. Litigation Div., Comm. of P.R., for defendants.

### OPINION AND ORDER

CEREZO, District Judge.

The Court has before it the threshold issue of whether the administrative remedies available to plaintiff before the Air Force Board for Correction of Military Records (AFBCMR) are indeed futile, allowing us to entertain his claim before the

same are exhausted. The matter was left unresolved in our Opinion and Order of June 6, 1991 769 F.Supp. 440 (docket entry 21), as the evidence then on record did not provide sufficient information allowing us to make a finding on the issue. In order to supplement the record with the relevant data, an evidentiary hearing was held before the Court on August 1, 1991. Based on the additional evidence presented at the hearing, defendants have once again moved for dismissal of the action (docket entries 29 & 30), alleging that the administrative remedy provided by the Board is in fact adequate. Plaintiffs have opposed the motion (docket entry 31), reasserting their previous claim that the remedies provided by the Board are inadequate and inappropriate in the particular case of plaintiff John Doe. The Court being fully apprised on the matter, now addresses the same.

 We must begin by delineating the scope of our inquiry. As acknowledged in our previous order, the general rule is that courts should abstain from reviewing internal military affairs, unless an allegation concerning the deprivation of a constitutional right or a violation of applicable statutes and regulations is raised by a party, and he, in turn, has exhausted all available intra-service corrective measures. *Mindes v. Seaman*, 453 F.2d 197 (5th Cir.1971); *Peñagaricano v. Llenza*, 747 F.2d 55 (1st Cir.1984). This exhaustion requirement is not to be inflexibly applied, however, as it is conditioned to the availability of effective administrative remedies. *McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). Whether the administrative remedies provided by the AFBCMR are in fact effective is now the focus of our probe, as plaintiff has specifically alleged that its procedural scheme, the remedies it is entitled to provide, and the length of time it takes to do so combine themselves to render any attempt to resort to the same all but futile in the particular circumstances of this case. In our previous Order, we noted that a similar conclusion was reached by Judge Bratton, sitting in the District Court of New Mexico, in the case of *Rew v. Ward*, 402 F.Supp. 331 (D.N.M.1975), after a detailed examination of the procedures provided by the Board. Judge Bratton, in describing the adjudication of a typical case before the Board, noted several factors which, to his understanding, render the Board totally inept in affording claimants the desired remedy. The Court specifically noted, among other factors: the Board workload of 400 applications per month; its composition by civilian employees of the Department of Defense who were engaged in full time duties in responsibilities other than their BCMR memberships; the fact that hearings before the Board were entirely discretionary, and generally denied; the further aggravation faced by claimants in those cases where a hearing was in fact granted, as they had to assume the burden of travel and lodging expenses for themselves and their witnesses since the Board sits only in Washington, D.C.; the Board's lack of a formal discovery procedure and subpoena power; its reliance, when faced with legal issues, in the opinions of the Office of the Judge Advocates General, which were not made available to the applicant for comment; its failure to provide the applicant with any findings or the basis for a decision once one was reached; the fact that no interlocutory relief was available from the Board; and, finally, the average length of time it usually took the Board to consider a case, which in 1974 was from one to two years. *See Rew*, 402 F.Supp. at 333–36. Based on these considerations, the Court concluded that to pursue the administrative remedy before the Board "... would not only be expensive and time consuming but also totally useless." *Rew*, 402 F.Supp. at 336. Mindful of this finding, with which we agree in principle, we now consider whether the present organization of the Board has substantially improved allowing us to reach a different result.

Following our instructions, the evidence presented at the hearing was centered precisely on whether the situation described by the Court in *Rew* had indeed changed, providing an adequate administrative remedy. Plaintiffs presented initially as evidence the testimony of Mr. Cruz A. Valentin, the Deputy Advocate for the Office of

Veterans Affairs for the Commonwealth of Puerto Rico. Mr. Valentin testified that one of the functions of his office is to represent Veterans before the different military boards for the correction of records, although most of his experience has been with the Discharge Review Board of the Army, and not with the AFBCMR. He identified fifteen cases filed before the Discharge Review Board in which the issuance of a decision took between two (2) and five (5) years. However, no evidence was presented by him as to how long it took the AFBCMR to issue a decision in cases actually filed before it.

Plaintiffs' second witness was Mr. Rafael Antonio Zapata, who was active in the military for thirty six (36) years and, as plaintiff, also held both a military and a civilian position with the Puerto Rico Air National Guard (PRANG). In 1981 he was separated from his military position and terminated from his civilian job with the PRANG, and on January 12, 1983 he filed an application before the AFBCMR seeking the deletion of certain derogatory remarks from his record, as well as reinstatement and back pay. A final decision was issued by the AFBCMR on April 30, 1984, and notified to him on May 10, 1984, nearly sixteen (16) months after the initial application. In its decision, the Board ordered the alleged derogatory remarks to be stricken from his record, but expressly denied his request for reinstatement to the military position. In addition, and as to his request for civilian reinstatement, the Board concluded that it was not "empowered with authority to accomplish such action." *See* Plaintiffs' Exhibit 1.

Plaintiff John Doe also testified at the hearing. He had been a member of the PRANG since 1967, and was employed by it since 1969 as an aircraft electrician. On September and October of 1990, he was separated from both his military and civilian positions with the Guard, upon testing positive for the H.I.V. virus. Termination from his civilian employment was officially effectuated on June 29, 1991. Previous to his dismissal from both positions, his monthly salary was around $2500.00 a month. The only income his family receives now is his wife's salary as a government employee which amounts to $750.00 a month. The basic expenses of the family, which include mortgage and loan payments, utilities, school tuition, and food, among others, easily exceed the family income. In addition, plaintiff's medical treatment places a further stress on the family's limited budget, as he is currently being medicated with zidovudine (formerly called azidothymidine, or AZT), must attend a monthly medical appointment with an immunologist, and is required to undergo a thorough medical checkup every six months. Most of the costs of these medical expenses are being covered by his health insurance plan for which he has to pay a monthly premium of $201.00. If his coverage were to be terminated, costs could certainly skyrocket. Due to his limited resources, plaintiff would not be able to go to Washington, D.C. for a hearing, in case the Board were to provide one, or to pay his witnesses' expenses to attend the same.

Additional documentary evidence submitted by plaintiffs consisted of an application made by Mr. Reynaldo León–Zayas before the AFBCMR. *See* Plaintiffs' Exhibit 6. Mr. León–Zayas' application was filed on May 8, 1989, and in it he requested back pay and reinstatement to his post as supply technician in the PRANG. His requests were denied by the Board on April 15, 1991, close to *two* years after his application. *See* Plaintiffs' Exhibit 10. A previous request filed by him before the Board, in which he requested correction of his military record to have his discharge upgraded to honorable, took more than a year to be adjudicated. It was filed on November 1987 and decided on December 27, 1988. *See* Plaintiffs' Exhibit 9.

Defendants' sole testimonial evidence at the hearing consisted of the declaration of Mr. Bruce Braswell, Executive Director of the AFBCMR, who testified at length regarding the operation of the Board. He described the Board as being staffed by forty-two (42) civilian employees of the Air Force, who work there as a collateral duty. There are no full-time Board members. These forty-two (42) Board members act as

a jury pool, from which a group of three members are selected to convene an adjudicatory panel.

According to the testimony of Mr. Braswell, and the documents further submitted as evidence by defendants (Defendants' Exhibits A & B), any application filed before the Board is subjected to the following procedure. Initially, and once the application is received at the Board's processing center in Randolph's Air Force Base, Texas, staff members conduct a cursory screening process to check that it has been filled out correctly and that it is complete. If it survives this initial screening procedure, the same staff members then proceed to obtain an advisory opinion from the Air Staff Office affected by the request, in order for the record to reflect its position regarding the action taken and later challenged. If the advisory opinion recommends the denial of applicant's request, the Board then provides the claimant with a copy in order for him to submit any comments to the same. These comments are usually due within thirty (30) days, but requests for extension of time to file the same are routinely granted. It must be noted that the recommendation of the Air Staff Office is not binding on the Board. In addition, it is not unusual for the Board to request additional advisory opinions, either from the Judge Advocates Office or from the Air Force Personnel Division.

Once claimant submits his comments to any one of these advisory opinions, and upon supplementation of his original application with all the relevant records, the same is referred to a panel of the Board for its consideration and final decision. The claimant may request a personal appearance before the Board by checking the appropriate box in the application form, but these are rarely granted. In fact, Mr. Braswell stated that out of 4,500 cases filed last year before the Board, in only fifteen (15) a request for a formal appearance was in fact granted. If a personal appearance is permitted by the Board, the claimant, as well as his witnesses, must travel to Washington, D.C. to attend the same. Of course, all travel and lodging expenses would have to be covered by the applicant.

While the claim is being considered by the Board, no interlocutory relief is provided to the applicant, as it lacks the power to stay any proceedings. The Board does not have subpoena powers either, and the responsibility of locating any relevant witnesses or documentary evidence is entirely that of the applicant. Once the Board reaches a decision, a record of proceedings is prepared by the panel, constituting this the Board's findings as to the matter being contested. In its record of proceedings, the Board then recommends to the Secretary of the Air Force the final action which it considers should be taken in the case. Although the Secretary has the authority to accept or reject a recommendation of the Board, it is normally accepted.

According to the testimony of Mr. Braswell, it normally takes the Board around six (6) to eight (8) months to adjudicate a case, although he admitted that complex cases usually take years to resolve. During the last five years, the caseload of the Board has hovered around 5,000 applications annually. Last year alone, 4,500 cases were filed before the Board. Half of these were uncontested by the relevant divisions of the Air Force, and were customarily solved quickly. The other half, or approximately 2,250, were contested, and of these only 20% obtained the relief requested. Mr. Braswell recognized that the Board has a working backlog, which according to his estimate amounts to at least 800 cases at this moment. When asked about the particular facts of this case, he acknowledged that this would probably be a contested case. He also recognized, with regard to the specific remedies being requested by plaintiff, that the Board would be unable to order reinstatement to his civilian position or back pay regarding his civilian status.

As an additional piece of evidence, defendants have submitted an application filed by Mr. Jorge D. Jordan Stuart before the AFBCMR, in which he requested to be reinstated as a member of the PRANG. This application was first submitted to the

Board on July 24, 1990, and a final decision was issued on June 13, 1991, about a year later. In the decision, the Board expressly stated that it had "... no authority to reinstate the applicant in the PRANG," although it acknowledged a representation made by the Air Staff that such relief would be provided by the PRANG on their own initiative if the Board's decision was favorable to the applicant.

Having considered all the evidence presented at the hearing, which we have just summarized, we are of the opinion that it preponderantly shows that the administrative remedy provided by the AFBCMR is indeed inadequate to a claimant in plaintiff John Doe's situation since exhaustion would be nothing more than a sordid exercise in futility. In fact, it seems clear that the procedures before the Board have not changed much in the sixteen years since Judge Bratton issued his opinion in *Rew*, apart from the fact that the advisory opinions requested by the Board are now made available to the claimants for their comments, and that the final decisions are now accompanied with written findings. To be sure, the Board has not seen a substantial reduction in its workload, as it still receives close to 375 applications per month. In addition, it continues to be composed by civilian employees with other full-time duties; the holding of hearings is still discretionary, and seldom granted; these are conducted only in Washington, D.C., with the additional costs this represents to applicants; and the Board still lacks formal discovery procedures and subpoena power as well as the authority to grant any kind of interlocutory relief. If we add to this the excessive period of time which it takes the Board to review a case, which actual records of proceedings presented as evidence revealed to be almost invariably in excess of one year, it appears that the procedures before the Board remain as expensive, time consuming and useless as they were in 1975. To require plaintiff John Doe to tread this long, tortuous path in his particular circumstances, where the passing of time and financial concerns are of utmost consideration, only to obtain at the very best partial relief by the Board would not only be an undue burden to him, but would constitute an unwarranted abdication of our duty to provide litigants with a just, fair and prompt relief to their claims. We believe that nothing will be gained, and much could be lost, were plaintiff John Doe to resort to the Board for an adjudication of his claim.

Accordingly, we find that exhaustion of the administrative remedies provided by the AFBCMR is not required in the particular circumstances of this case. Defendants' motion to dismiss is hereby DENIED. The case is set for a consolidated hearing on plaintiffs' request for a preliminary and permanent injunction on December 16, 1991 at 9:30 A.M.

SO ORDERED.